221 N.J. Super. 103 (1987)
534 A.2d 21
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
MARIANO CARRION-COLLAZO, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 6, 1987.
Decided October 29, 1987.
*105 Before Judges SHEBELL, GAYNOR and A.M. STEIN.
Steven P. Goodell, Assistant Prosecutor, argued the cause for appellant (Paul T. Koenig, Jr., Mercer County Prosecutor, attorney; Steven P. Goodell, of counsel and on the letter brief).
Bernadette DeCastro, Assistant Deputy Public Defender, argued the cause for respondent (Alfred A. Slocum, Public Defender, attorney; Bernadette DeCastro, of counsel and on the letter brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
This is a case of first impression in New Jersey. The State appeals the Law Division's February 1987 granting of defendant's motion for post-conviction relief which vacated defendant's convictions and sentences and granted a new trial. The motion judge found that the State's failure to show a voluntary waiver by defendant of his right to wear civilian clothes at trial *106 was a violation of defendant's constitutional right to a fair trial under the due process clause. Defendant, Mariano Carrion-Collazo, was convicted of murder, possession of a weapon for an unlawful purpose and unlawful possession of a weapon, following a jury trial in February 1983. The New Jersey Supreme Court denied certification of our affirmance on direct appeal of defendant's convictions and sentences.
Within hours of the crime, defendant was arrested and transported to the Mercer County Detention Center from a local police station. The civilian clothes he was wearing at the time of his arrest were taken from defendant at the police station and he was dressed in "detention center greens." Collazo never again saw his civilian clothes but was told that the State was holding them "as proof against me." Collazo remained in custody for approximately seven months prior to trial, during which time his residence burned down. His "common-law wife" retained an attorney to represent him. The attorney met with Collazo at least four times while defendant was confined. Communication was through inmate-interpreters.
Several days before trial, the trial judge's secretary contacted defense counsel and asked him "to attempt to have Mr. Collazo clothed in civilian clothing for the onset of ... trial." The attorney "spoke with Mr. Collazo on Saturday [before the trial] and I told him that if his girlfriend did come by to ask her to see if she could get some clothes." The attorney testified he advised his client that
I did not consider it to be a problem if he was not able to get clothes because even if he did, it would probably be one set which he would have to wind up wearing day in and day out, and my experience is that that has roughly the same effect as someone sitting in court with prison garb on day to day.
Collazo appeared on the first day of trial dressed in detention greens. The problem was acknowledged before the jury was impanelled and defense counsel proposed that the court advise the jury that
Mr. Collazo was arrested at the time of this incident and has not made bail since that time and accordingly is wearing prison clothing because he is currently incarcerated in the detention center pending the outcome of this case and that *107 they are not to draw any inferences from the fact that he is wearing the prison greens, that he is still entitled to the presumption of innocence.
The attorney also requested the charge
so the jury understood the reason he was in prison clothing was this charge, this arrest for homicide and not some other charge that he was being brought in from another institution.
The prosecutor, concerned with potential prejudice to the State, requested that defendant be given an opportunity to get civilian clothes. In response to the prosecutor's concerns, the court stated:
We have already taken care of the first part of your request that he be given an opportunity to get clothes because this case has been specially set down for a good month, we have all known the date for a very, very long while. [Defense counsel] has discussed it with his client.
The court indicated that the matter would be handled in voir dire of the jury, to which defense counsel and the prosecutor agreed. Concerning defendant's understanding of the situation, his attorney represented to the court:
He appears to be cognizant of the nature of the problem and nature of my proposed solution. I don't think he has any difficulty with it, but if the Court wants to direct any further inquiry directly to him, I am amenable to that.
Defendant at the hearing on his post-conviction relief motion said he accepted his attorney's advice on the first day of trial to wear prison garb, and that his attorney told him prior to trial that his dress would make no difference. He further stated that he changed to civilian clothes after the first couple of days of trial based on advice from other inmates and since his girlfriend had made clothes available by that time.
At that hearing, the defendant's attorney explained that defendant's appearance in greens at trial was a strategic matter, since such garb facilitates a manslaughter defense by suggesting to the jury that "the decision you make is not the difference between this guy going to jail and going free but the difference between the number of years...." The defense attorney further stated that he saw no distinction between civilian clothes and greens in their effect on a jury, because
when you get a maximum security prisoner, he comes in in the same set of clothes every day and suddenly there is five sheriff's officers in the courtroom *108 who weren't there before, the jury looks around and, hey, like, you expect us not to know this guy is incarcerated.
To me it is not nothing more than a subtle attempt to divert the jury's attention from the truth and I never understood why. You know, in Britain you just have the defendant stand in the dock and they know he is being brought up from jail.
The attorney could not understand why "[f]or some reason the defense attorneys insist on civilian clothing in so many cases." Counsel also wanted to present his client as "a guy who was wrongfully accused...." Defense counsel further stated:
what you do in this type of case is you just let the prosecutor start and see what develops ... you just get into the case knowing you really don't have a defense but you got nothing to lose because of the plea bargain and you just wait and see what develops. [Emphasis supplied].
The Law Division judge found that no question of trial strategy existed since the unavailability of civilian clothing foreclosed any exercisable option to defendant, and that even if there were such a strategy, federal case law indicated the need for "a clear, intelligent waiver from his client since [the attorney] is taking away from him one of his constitutional rights." The judge also found the State and the trial court to be lacking in their responsibility to defendant. Drawing an analogy to the Fifth Amendment, the judge asserted:
It was the duty of the prosecutor to ask the judge to record a waiver. It was the duty of the judge to do so. It was not the defendant's duty to record it.
The motion judge concluded that there was an insufficient discussion of defendant's rights to support a waiver; only discussion of "what they were going to do since [the defendant] didn't have any civilian clothes with him." The court continued:
When I think of all the efforts which are made by a defense lawyer to grab every possible inference which will aid his client, I can't believe that he would not fight to avoid the inference which comes from appearing before the jury in prison garb. A man certainly should never suffer a life sentence in prison for want of a shirt and what you boil it down to, it is the smallest level of consideration here, it comes to that. At least, he could have been given a white shirt when he stood trial for murder.
The post-conviction relief motion was therefore granted.
We find no New Jersey case law on this subject. The trial judge, however, did not consider the United States Supreme *109 Court's opinion in Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1619, 48 L.Ed.2d 126, reh'g den. 426 U.S. 954, 96 S.Ct. 3182, 49 L.Ed.2d 1194 (1976). In Williams, defendant appeared at trial in prison garb when his request for civilian clothes was denied, but neither the defendant nor his counsel objected at any time. Id. at 502, 96 S.Ct. at 1692, 48 L.Ed.2d at 129-30. The Court held that
although the State cannot, consistent by [sic] with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes, the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation. [Id. at 512-13, 96 S.Ct. at 1696-97, 48 L.Ed.2d at 135 (footnote omitted)].
The Court acknowledged that the presumption of innocence is "a basic component" of the right to a fair trial secured by the Fourteenth Amendment, id. at 503, 96 S.Ct. at 1692, 48 L.Ed.2d at 130, and that "[i]n the administration of criminal justice, courts must carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt." Ibid. The Court agreed that the practice of wearing prison garb "may affect a juror's judgment," "furthers no essential state policy" and "operates usually against only those who cannot post bail prior to trial." Id. at 505, 96 S.Ct. at 1693, 48 L.Ed.2d at 131. It concluded, however, that
the courts have refused to embrace a mechanical rule vitiating any conviction, regardless of the circumstances, where the accused appeared before the jury in prison garb. Instead, they have recognized that the particular evil proscribed is compelling a defendant, against his will, to be tried in jail attire. [Id. at 507, 96 S.Ct. at 1694, 48 L.Ed.2d at 132-33].
The Supreme Court appropriately noted that this approach arises from the "not ... uncommon defense tactic" of attempting to elicit the jury's sympathy by having the defendant appear in prison garb. Id. at 508, 96 S.Ct. at 1695, 48 L.Ed.2d at 133 (footnote omitted).
Whether defendant in Williams appeared in prison garb as a matter of defense tactic or indifference was not considered important since, "[i]n either case, [defendant's] silence precludes any suggestion of compulsion." Id. at 512 n. 9, 96 S.Ct. *110 at 1697 n. 9, 48 L.Ed.2d at 135 n. 9. Since in Williams, as here, no evidence was adduced indicating a policy of compulsion, id. at 510-12, 96 S.Ct. at 1695-97, 48 L.Ed.2d at 134-35, the trial judge could not be faulted
for not asking the [defendant] or his counsel whether he was deliberately going to trial in jail clothes. To impose this requirement suggests that the trial judge operates under the same burden here as he would in the situation in Johnson v Zerbst, 304 US 458, 82 L Ed 1461, 58 S Ct 1019, 146 ALR 357 (1938), where the issue concerned whether the accused willingly stood trial without the benefit of counsel. Under our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. Any other approach would rewrite the duties of trial judges and counsel in our legal system. [Id. at 512, 96 S.Ct. at 1697, 48 L.Ed.2d at 135].
The fact that the accused was represented by counsel in Williams distinguished it from those cases involving "an alleged relinquishment of a fundamental right of the sort at issue in Johnson v Zerbst" where the defendant's decision to forego the fundamental right of assistance of counsel required a showing of conscious surrender of a known right. Id. at 508 n. 3, 96 S.Ct. at 1695 n. 3, 48 L.Ed.2d at 133 n. 3.
Williams overruled the voluntary waiver principle enunciated by the federal circuit court cases on which the motion judge here relied. The Court of Appeals for the Third Circuit had observed in Gaito v. Brierley, 485 F.2d 86 (3d Cir.1973) that only when as part of a trial strategy a defendant "remain[s] silent and willingly go[es] to trial in prison garb" he voluntarily waives his constitutional right and is barred from any subsequent claim of error. Id. at 88 n. 3 (emphasis added) (citing Hernandez v. Beto, 443 F.2d 634, 637 (5th Cir.), cert. den. 404 U.S. 897, 92 S.Ct. 201, 30 L.Ed.2d 174 (1971)). This principle had been confirmed in Lemons v. United States, 489 F.2d 344, 345 (3d Cir.1974). However, building on the Gaito reasoning, the Lemons court further explained that "[e]ach case must be considered in its own factual context, and, as with all rights which emanate from the Constitution, the government bears the burden of showing a voluntary waiver." Id. at 345-46 (emphasis added) (footnotes omitted).
*111 Under Williams, the federal rule of law is that where defendant is represented by counsel, a waiver of defendant's right not to be compelled to appear at trial in prison garb is implied from defendant's failure to object. See, e.g., United States v. Dawson, 563 F.2d 149, 151 (5th Cir.1977); Gray v. Estelle, 538 F.2d 1190, 1190 (5th Cir.1976); Boswell v. Alabama, 537 F.2d 100, 102-04 (5th Cir.1976). This rule is an exception to the principle that a constitutional right is not presumed to be validly waived unless made by the accused personally with his knowledge of both the right, and the consequences, of waiver. See, e.g., United States v. Williams, 631 F.2d 198, 208 & n. 20 (3d Cir.1980) (Adams, Cir. J., dissenting); United States v. Dansker, 565 F.2d 1262, 1265 n. 10 (3d Cir.1977), cert. dismissed, 434 U.S. 1052, 98 S.Ct. 905, 54 L.Ed.2d 805 (1978).
In this case there is no evidence of any policy of compulsion. Collazo was represented by counsel and neither defendant nor his attorney objected. Further, defense counsel was satisfied that defendant's appearance in prison garb was supportive of defense trial strategy. The attorney also represented to the trial court his client's awareness of the situation. Contrary to the motion judge's conclusion, the trial judge was not under then existing law obligated to make any inquiry of the defendant personally, nor was the State required to bear the burden of showing a voluntary waiver. Further, any error is rendered harmless in light of the trial judge's voir dire and instruction to the jury. R. 2:10-2; State v. Macon, 57 N.J. 325, 340 (1971).
We must, however, express our concern that certain unfortunate defendants may in the future, without regard to a tactical or strategic trial decision, suffer an erosion of their presumption of innocence due to the unavailability of civilian clothing. See Coffin v. United States, 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481 (1895) concerning the importance of this presumption.
*112 In New Jersey the judiciary has a "constitutional responsibility to guarantee the proper administration of justice,... and particularly, the administration of criminal justice ...," State v. Williams, 93 N.J. 39, 62 (1983). We have looked to our own State Constitution on many occasions to afford our citizens broader protection of certain personal rights than that afforded by the federal Constitution; however, we do not find it necessary to do so in these circumstances. See State v. Novembrino, 105 N.J. 95, 145 (1987); Williams, 93 N.J. at 58; Right to Choose v. Byrne, 91 N.J. 287 (1982); State v. Hunt, 91 N.J. 338 (1982); State v. Alston, 88 N.J. 211 (1981); State v. Schmid, 84 N.J. 535 (1980), appeal dismissed sub nom. Princeton Univ. v. Schmid, 455 U.S. 100, 102 S.Ct. 867, 70 L.Ed.2d 855 (1982); State v. Johnson, 68 N.J. 349 (1975). We are convinced that, even in the absence of a constitutional requirement, future criminal defendants appearing for a jury trial in prison garb should be personally questioned by the trial judge concerning their desire to relinquish the right to appear in civilian clothing and that this right should be given up only by means of a knowing, intelligent and voluntary waiver on the record before the trial judge.
Notwithstanding the fact that we are satisfied that the due process rights of a defendant can be sufficiently safeguarded, as was accomplished in the present case, even when a defendant's incarceration is apparent to the jury, by a proper voir dire of the jurors and a cautionary instruction, we believe that the interests of justice are better served by trial judges ensuring that all future defendants in this State are advised of their right to wear civilian clothing and that defendants proceed to trial in prison garb only after explicit in-court waivers. As stated in Williams:
[t]he potential effects of presenting an accused before the jury in prison attire need not, however, be measured in the abstract. Courts have, with few exceptions, determined that an accused should not be compelled to go to trial in prison or jail clothing because of the possible impairment of the presumption so basic to the adversary system. Gaito v Brierley, 485 F2d 86 (CA3 1973); Hernandez v Beto, supra; Brooks v Texas, 381 F2d 619 *113 (CA5 1967); Commonwealth v Keeler, 216 Pa Super 193, 264 A2d 407 (1970); Miller v State, 249 Ark 3, 457 SW2d 848 (1970); People v Shaw, 381 Mich 467, 164 NW2d 7 (1969); People v Zapata, 220 Cal App 2d 903, 34 Cal Rptr 171 (1963), cert denied, 377 US 406, 12 L Ed 2d 495, 84 S Ct 1633 (1964); Eaddy v People, 115 Colo 488, 174 P2d 717 (1946). The American Bar Association's Standards for Criminal Justice also disapprove the practice. ABA Project on Standards for Criminal Justice, Trial by Jury § 4.1(b), p 91 (App Draft 1968). This is a recognition that the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment. [425 U.S. at 504-05, 96 S.Ct. at 1693, 48 L.Ed.2d 130-31].
Moreover, when a request for civilian clothing or a precautionary voir dire or jury charge is made by a defendant or his counsel such request may not be denied. We are aware that in the more populous counties advance planning and significant expenditures will be required to implement this safeguard as some defendants will not have civilian clothing available through their own resources. We are convinced, however, that appropriate action can reasonably be taken to comply with this court's mandate, and that on balance the cost and inconvenience are fully warranted.
Although the defendant presented his entire evidence in support of his motion for post-conviction relief, the motion judge did not decide the issues of ineffective assistance of counsel and illegal sentence because of his disposition of the motion on fair trial grounds. In the interest of judicial economy we dispose of defendant's remaining contentions.
Regarding the assertions of ineffective counsel, New Jersey has adopted the two-prong test of Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693, reh'g denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984), requiring defendant to show that counsel's performance was deficient and that the deficient performance prejudiced the defense. State v. Fritz, 105 N.J. 42, 58 (1987). "[A] conclusive presumption of prejudice is inappropriate except in cases exemplified by egregious shortcomings in the professional performance of counsel." Id. at 61. We find no evidence in the record *114 to support a finding that trial counsel's performance was deficient or that the defense was prejudiced by defense counsel.
Defendant's argument that his sentence was illegal is clearly without merit. On initial appeal, this court found defendant's sentence to be reasonable under the statutory provisions "in force at the time the defendant committed the murder." State v. Carrion-Collazo, No. A-4108-82T4, slip op. at 7 (N.J. Super.Ct.App.Div. Jan. 24, 1986). This holding comports with the rule that a "convicted defendant may be sentenced in accordance with the penalty in effect at the time he committed the crime, even though the penalty for that crime has subsequently been reduced." State v. Glass, 171 N.J. Super. 157, 160 n. 2 (Law Div. 1979) (citing State v. Ford, 119 N.J. Super. 260, 263 (App.Div. 1972)). See also State v. Bass, 141 N.J. Super. 170, 171 (App.Div. 1976).
The order vacating defendant's convictions and sentences and granting defendant a new trial is reversed. Defendant's motion for post-conviction relief is denied.