895 A.2d 1163 (2006)
384 N.J. Super. 586
STATE of New Jersey, Plaintiff-Respondent,
v.
Michael RUSSELL, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted December 7, 2005.
Decided April 10, 2006.
*1164 Yvonne Smith Segars, Public Defender, for appellant (William Welaj, Designated Counsel and on the brief).
*1165 Thomas S. Ferguson, Warren County Prosecutor, for respondent (Tara J. Kirkendall, Assistant Prosecutor, of counsel).
Before Judges SKILLMAN, AXELRAD and PAYNE.
The opinion of the court was delivered by
PAYNE, J.A.D.
Defendant Michael Russell appeals his conviction for second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 and 2C:15-1 (count one), third-degree conspiracy to commit burglary, N.J.S.A. 2C:5-2 and 2C:18-2 (count two), first-degree robbery, N.J.S.A. 2C:2-6 and 2C:15-1 (count three), second- and third-degree burglary, N.J.S.A. 2C:2-6 and 2C:18-2 (count four), third-degree terroristic threats, N.J.S.A. 2C:12-3b (count five), third-degree possession of a weapon, a knife, for an unlawful purpose, N.J.S.A. 2C:39-4d (count six), unlawful possession of a knife, N.J.S.A. 2C:39-5d (count seven), second-degree aggravated assault with a knife, N.J.S.A. 2C:12-1b(1) (count eight), and third-degree aggravated assault with a knife, N.J.S.A. 2C:12-1b(2)(count nine). He also appeals his sentence of fifteen years in custody with an eighty-five percent parole disqualifier pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, on count three (first-degree robbery) and concurrent five-year terms on counts four (second-degree burglary), five (third-degree terroristic threats), six (third-degree possession of a weapon for an unlawful purpose), eight (second-degree aggravated assault), and nine (third-degree aggravated assault).
Defendant makes the following arguments:
POINT I
THE TRIAL COURT ERRED IN DENYING DEFENSE COUNSEL'S REQUEST TO INSTRUCT THE JURY REGARDING THE DEFENSE OF RENUNCIATION.
POINT II
THE TRIAL COURT ERRED IN DENYING DEFENSE COUNSEL'S MOTION FOR A MISTRIAL AS A RESULT OF THE TRIAL COURT'S RULING PERMITTING THE CO-DEFENDANT TO TESTIFY AS A STATE'S WITNESS WHILE APPEARING IN PRISON CLOTHING, HANDCUFFS AND LEG SHACKLES.
POINT III
THE TRIAL COURT ERRED IN DENYING DEFENSE COUNSEL'S MOTION FOR A NEW TRIAL ON THE BASIS THAT CERTAIN JURORS WERE ADVERSELY AFFECTED AS THE RESULT OF CONDUCT THEY OBSERVED WHICH OCCURRED OUTSIDE THE COURT ROOM DURING DELIBERATIONS.
POINT IV
THE DEFENDANT WAS DENIED HIS RIGHT TO A FAIR TRIAL AS A RESULT OF TESTIMONY BY A STATE'S WITNESS INFERENTIALLY CONNECTING THE DEFENDANT WITH PRIOR CRIMINAL CONDUCT. (Not Raised Below.)
POINT V
THE TRIAL COURT ERRED BY FAILING TO MERGE COUNT VI (POSSESSION OF A WEAPON FOR AN UNLAWFUL PURPOSE) INTO COUNTS VII AND IX (SECOND DEGREE AGGRAVATED ASSAULT AND THIRD DEGREE AGGRAVATED ASSAULT), AND FURTHER ERRED BY FAILING TO MERGE COUNT V (TERRORISTIC THREATS) AS WELL AS COUNTS VII AND IX INTO COUNT I (FIRST DEGREE ROBBERY). (Partially Raised Below.)

*1166 POINT VI

THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE.
We reverse, because we find that the appearance before the jury of a witness for the prosecution (defendant's alleged co-conspirator) in handcuffs and leg shackles, in the absence of an evidentiary record establishing that security concerns posed by the witness outweighed the potential prejudice caused by his appearance in restraints, denied defendant his right to a fair trial under the Federal and New Jersey Constitutions.

I.
Testimony at trial disclosed that on July 15, 2002 defendant told drinking companion Bashir Muhammad that he knew of a place to obtain money and marijuana, and he suggested a nighttime break-in. The two men proceeded to and entered an apartment occupied by Thomas Sloane and his girlfriend, Desiree Kise, where they were discovered by Sloane. Defendant, armed with a knife, lunged at Sloane, and a struggle ensued, during which defendant "poked at" Sloan with his knife and threatened to kill him. Both intruders had their faces covered by their T-shirts. However, Kise recognized defendant's voice as that of "Twiz," the street name by which defendant was known. Although defendant denied the identification, stating "[i]t ain't Twiz, it ain't Twiz," as the struggle continued, defendant's shirt was partially removed from his face, permitting Sloane to confirm the identification. When Kise then sought to call 911, Muhammad struck the phone out of her hand and said to defendant "let's go." They did so, and were soon thereafter apprehended by the police in front of a bar located a short distance from the crime site. A protective search following defendant's arrest resulted in the discovery of a pocket knife with a serrated blade.
Muhammad confessed to the police and later entered a plea of guilty to conspiracy to commit second-degree burglary and hindering apprehension. He agreed to testify for the State against defendant as a condition of the post-trial imposition of a six-year custodial term subject to NERA. Muhammad's testimony was given while he was in custody awaiting sentencing.

II.
We find no merit in defendant's first argument that the trial court erred in failing to charge renunciation of the criminal purpose of robbery as the result of the departure of defendant and Muhammad from the apartment before anything was stolen. The affirmative defense of renunciation is governed by N.J.S.A. 2C:5-1(d) (applying to attempts), 2C:2-6e(3) (applying to accomplices), and 2C:5-2e (applying to conspirators). All three statutes require the defendant to prove by a preponderance of the evidence specified forms of conduct occurring under circumstances manifesting a "complete and voluntary renunciation" of the defendant's criminal purpose. Both N.J.S.A. 2C:2-6e(3) and 2C:5-2e refer specifically to the explanation of voluntary renunciation contained in N.J.S.A. 2C:5-1(d), which provides:
[R]enunciation of criminal purpose is not voluntary if it is motivated, in whole or in part, by circumstances, not present or apparent at the inception of the actor's course of conduct, which increase the probability of detection or apprehension or which make more difficult the accomplishment of the criminal purpose.
The record in this matter discloses that, prior to the time that defendant and Muhammad determined to abandon their criminal enterprise, Sloan had discovered their unlawful presence in his apartment and had engaged in a struggle with defendant, preventing him from proceeding with *1167 the intended theft of property. Both Sloan and his girlfriend Kise had learned defendant's identity, and Kise had made an attempt, albeit unsuccessful, to call the police. It was only then that the two co-conspirators, at Muhammad's urging, fled. The record offers no evidence to suggest that defendant renounced his criminal purpose. Indeed, at trial Muhammad testified that defendant later queried whether the two should resume their criminal activities. Thus the evidence establishes, rather than renunciation, only temporary abandonment of purpose when the crime proved at the time to be more difficult and risky than planned. In this circumstance, there was no rational basis for the jury to conclude that the affirmative defense of renunciation had been proven, and therefore no grounds existed for the charge that defendant requested. State v. Alston, 311 N.J.Super. 113, 121, 709 A.2d 310 (App. Div.1998).

III.
At trial, Muhammad testified for the State while dressed in prison garb and while restrained both by handcuffs and leg shackles. Prior to his testimony as a witness, defense counsel objected to Muhammad's appearance in restraints and clothing identifying him as a prisoner, arguing that it prejudiced defendant. The court overruled the objection, stating with respect to Muhammad's restraints:
I'm a firm believer that everybody in life has a job to do. The sheriff's deputies have a job to do. They're responsible for security in this courtroom. If they wish the witness to appear unshackled, that's fine. If they don't, that's also fine. I leave that up to them.
Upon being informed of the sheriff's officers' wish that Muhammad remain shackled because two inmates were present in the courtroom, the court observed:
Two inmates? Oh, all right. Either that or you get more deputies, I guess. That  very well. You're going to maybe have to assist Mr. [Muhammad] to get up in the witness stand.
The judge did not address the subject of Muhammad's clothing or permit him to change into civilian clothes. Additionally, he did not instruct the jurors at the commencement of Muhammad's testimony that they could draw no inference of defendant's guilt from Muhammad's appearance, and he gave no such instruction at the close of the case.[1] A motion for a mistrial based upon Muhammad's clothing and restraints was denied.
Our Federal and State Constitutions both guarantee defendant the right to a fair trial before an impartial jury and to a determination of guilt or innocence based solely on the evidence introduced at trial, "and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." State v. Artwell, 177 N.J. 526, 533-34, 832 A.2d 295 (2003) (quoting State v. Zhu, 165 N.J. 544, 553, 761 A.2d 523 (2000), quoting Taylor v. Kentucky, 436 U.S. 478, 485, 98 S.Ct. 1930, 1934, 56 L.Ed.2d 468, 475 (1978) and citing U.S. Const. amends. V, VI and XIV; N.J. Const. art. I, ¶ 10). As a result, a trial court may allow an inherently prejudicial practice "only where justified by an essential state interest specific to each trial." Artwell, supra, 177 N.J. at 534, 832 A.2d 295 (quoting Holbrook v. Flynn, 475 U.S. 560, 568-69, 106 S.Ct. 1340, 1345-46, 89 L.Ed.2d 525, 534 (1986)). A practice is "inherently prejudicial" when "an unacceptable risk is presented of impermissible *1168 factors coming into play." Ibid. (quoting Estelle v. Williams, 425 U.S. 501, 505, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 126, 131 (1976)).
Courts have long held that to insure his fair trial, a criminal defendant has the right to appear before a jury free from restraints. See, e.g., State v. Roberts, 86 N.J.Super. 159, 162-63, 206 A.2d 200 (App. Div.1965) (discussing common-law origins of the rule). We have found the reason for the rule to lie, in part, in the recognition that a jury "must necessarily conceive a prejudice against the [restrained] accused, as being in the opinion of the judge a dangerous man, and one not to be trusted, even under the surveillance of officers," in which case the defendant's right to a fair trial is infringed. Id. at 164, 206 A.2d 200 (quoting State v. Kring, 64 Mo. 591, 592-93 (1877)); see also State v. Damon, 286 N.J.Super. 492, 498, 669 A.2d 860 (App. Div.1996); State v. Jones, 130 N.J.Super. 596, 599, 328 A.2d 41 (Law Div.1974).
We held in Roberts that although the trial judge has the discretion to order that restraints be imposed, that discretion is strictly confined and can be exercised only upon demonstration of a sound reason for the ordered precautions, based upon a consideration of the individual circumstances presented. Id. at 164-68, 206 A.2d 200.[2] In that context, we found that evidence solely indicating a deferral to the wishes of the officers in charge of the prisoner does not provide grounds for the conclusion that the court's discretion has been meaningfully exercised. Id. at 166, 206 A.2d 200. When such total deference is extended, we observed, "[t]here [has been] thus a complete resignation of the exercise of discretion"; custodial authorities dictated the shackling, not the judge. Id. at 166, 206 A.2d 200.[3] Accordingly, we determined that the entire security issue should be aired at a transcribed hearing, "however informal, but on the record," id. at 167, 206 A.2d 200, so that a record will exist "on which an appellate court can determine if the trial judge has properly exercised his discretion, i.e., whether there were reasonable grounds for apprehension as to defendant's conduct." Ibid.; see also Damon, supra, 286 N.J.Super. at 499, 669 A.2d 860. We further held that when, after a hearing, the court concludes that restraints are necessary, "it is of the essence that [the court] instruct the jury in the clearest and most emphatic terms that it give such restraint no consideration whatever in assessing the proofs and determining guilt. This is the least that can be done toward insuring a fair trial." Id. at 168, 206 A.2d 200; see also Damon, supra, 286 N.J.Super. at 499, 669 A.2d 860. However, we observed:
It may be doubted whether any jury, even with the best of cautionary instructions, can ever dismiss from its mind that the accused has appeared before it in handcuffs or chains. His being restrained must carry obvious implications even to the most fairminded of juries.
[Roberts, supra, 86 N.J.Super. at 168, 206 A.2d 200.]
We extended our holding to defendant's only witness in State v. Smith, 346 N.J.Super. 233, 787 A.2d 276 (App.Div.2002), observing that "[w]hile shackling a defense *1169 witness is not the exact equivalent of shackling the defendant, in some circumstances. . . the resulting prejudice can be equally detrimental." Id. at 239, 787 A.2d 276. We noted that our determination accorded with the American Bar Association's Standards for Criminal Justice, which provide:
(b) The court should not permit a defendant or witness to appear at trial in the distinctive attire of a prisoner, unless waived by defendant.
(c) No defendant should be removed from the courtroom, nor should defendants and witnesses be subject to physical restraint while in court unless the court has found such restraint necessary to maintain order.
(d) . . . Whenever physical restraint or removal of a defendant or witness occurs in the presence of jurors trying the case, the court should instruct those jurors that such restraint or removal is not to be considered in assessing the proof and determining guilt.
[Smith, supra, at 239-40, 787 A.2d 276 (quoting Control, Restraint or Removal of Defendants and Witnesses, A.B.A. Standards for Criminal Justice 15-3.2 (3d ed. 1996) (emphasis added in Smith).)]
Additionally, in Smith we found that the balancing of the need for courtroom security against the potential prejudice of the restraints and the procedures adopted for that determination that we had recognized in earlier decisions regarding defendants applied equally to their witnesses, as did the need for jury instruction if the court found it necessary for a witness to testify while in restraints. Id. at 240-41, 787 A.2d 276. Although we hypothesized that the testimony of certain defense witnesses could be found so peripheral to issues of guilt or innocence that the appearance of a witness in prison garb and restraints did not constitute reversible error, we found such error to exist in Smith, since the witness at issue was the only independent person to testify to defendant's innocence of the crime for which he was charged. Id. at 240-41, 787 A.2d 276.
Smith was followed in short order by the Supreme Court's decision in Artwell, supra, 177 N.J. 526, 832 A.2d 295, holding that a defense witness could not be required to appear in restraints, without a demonstration of their necessity, or in prison garb. Artwell was decided within a week after the conclusion of defendant's trial. Although it was cited as precedent by defense counsel in his motion for a new trial, the court distinguished that precedent because the Supreme Court's decision concerned a defense, not a prosecution witness.
We find the trial court's distinction as applied to this case to be illusory. It must be recalled that defendant was accused of a crime of violence. Muhammad, a State's witness, had been charged as defendant's co-conspirator in that same crime. At trial, he testified that the two entered a house for the purpose of robbery; they were discovered; defendant pulled a knife and while thus armed engaged in a struggle with a male apartment resident; defendant made a demand for "the shit;" and defendant was identified by the apartment's female occupant as "Twiz." Muhammad also testified to defendant's inquiry, after they had run from the apartment, whether he "want[ed] to go back and finish the job."
During the course of his direct testimony, Muhammad's plea of guilty to conspiracy to commit second-degree burglary and to hindering apprehension, his potential sentence of six years in custody subject to NERA, the fact that the sentence was conditioned upon Muhammad's truthful testimony at trial, and the fact that Muhammad awaited sentencing was disclosed *1170 to the jury. Additionally the jury was apprised of Muhammad's prior convictions on two occasions for possession of drugs and his convictions for tampering with evidence, for receipt of stolen property, and for endangering the welfare of a child. Nonetheless, the Court in Artwell has observed that: "Even in those instances when the prosecution demonstrates a witness's criminal history to the jury by the entry of a conviction into evidence, that fact does not mitigate the additional harm caused by the sight of defendant's witness in restraints." 177 N.J. at 536, 832 A.2d 295. The fact of a witness' incarceration does not "imply that he [is] violent and ha[s] to be restrained in the jury's presence." Damon, supra, 286 N.J.Super. at 498, 669 A.2d 860.
In the case of a defense witness, the Artwell Court's concern was that the fact of restraints would diminish the credibility of the witness in the jury's view. 177 N.J. at 537, 832 A.2d 295. That concern may have less direct significance to the defendant here. Nonetheless, the court as an legal institution must be concerned when the import of the testimony of any witness, whether on behalf of the defense or the prosecution, can be judged in part by the witness' status, rather than solely by its content and credibility.
Further, as Justice Brennan has recognized in a concurring opinion, shackling "offends not only judicial dignity and decorum, but also that respect for the individual which is the lifeblood of the law." Illinois v. Allen, 397 U.S. 337, 350-51, 90 S.Ct. 1057, 1064, 25 L.Ed.2d 353, 363 (1970). The restraints upon Muhammad served to de-individualize him, permitting the jury to consider him simply as one of the "criminal class." Transference of this mind-set to defendant at a time when the presumption of innocence applied to him would be wholly inappropriate and fundamentally unfair.
Of additional significance, the existence of restraints necessarily conveyed the impression that the judge regarded Muhammad "as a dangerous man, and one not to be trusted, even under the surveillance of officers." Artwell, supra, 177 N.J. at 534, 832 A.2d 295 (quoting Kennedy v. Cardwell, 487 F.2d 101, 106 (6th Cir.1973), cert. denied, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974), quoting Kring, supra, 64 Mo. at 592-93).
This is not a case such as we hypothesized in Smith in which the testimony of the restrained witness was insignificant to the outcome. Although both victims of the crime testified to defendant's conduct, Muhammad's testimony provided crucial corroboration of defendant's actions and intent. That defendant's co-conspirator could be perceived by a jury to have had a inherently violent nature or to have committed a crime with defendant of sufficient violence to require restraints cannot be considered a de minimis concern in this circumstance. As the Artwell Court expressed it, the display of Muhammad in handcuffs and leg shackles "presented defendant as one who associates with individuals of questionable" and indeed dangerous character in a dangerous enterprise. Id. at 538, 832 A.2d 295.
Moreover, Artwell affirmed the principle that "the trial court may subject a witness to physical restraint only when it `has reason to believe it is necessary to maintain the security of the courtroom.'" Id. at 537, 832 A.2d 295 (quoting Harrell v. Israel, 672 F.2d 632, 635 (7th Cir.1982)). And to make that determination, the court must "hold a hearing, however informal, and state on the record out of the jury's presence [its] reasons for shackling the [witness], whether they are based on evidence from trial, information obtained from criminal records, or statements made by law enforcement officers." Ibid. (quoting *1171 Damon, supra, 286 N.J.Super. at 499, 669 A.2d 860). As stated by the Artwell Court, the trial court should consider, among other things,
(1) the seriousness of the present charge, (2) the person's character, (3) the person's past record, (4) past escapes by the person, (5) attempted escapes by the person, (6) evidence the person is planning an escape, (7) threats of harm to others, (8) threats to cause disturbance, (9) evidence the person is bent on self-destruction, (10) risk of mob violence, (11) risk of attempted revenge by victim's family, [and] (12) other offenders still at large, . . .
[Id. at 538, 832 A.2d 295 (quoting State ex rel. McMannis v. Mohn, 163 W.Va. 129, 254 S.E.2d 805, 810 n. 7 (1979) (quoting A.B.A. Advisory Committee on the Criminal Trial, Standards Relating to Trial by Jury (Approved Draft 1968), at 96 n. 9), cert. denied, 464 U.S. 831, 104 S.Ct. 110, 78 L.Ed.2d 112 (1983)).]
The necessity of a jury instruction when restraints are ordered, following a hearing, was also affirmed by the Artwell Court. Ibid.
As a final matter, the Court in Artwell additionally found the requirement that a prisoner testify in prison garb, unlike restraints, can further no vital State interest. Id. at 539, 832 A.2d 295 (citing State v. Maisonet, 166 N.J. 9, 17, 763 A.2d 1254 (2001)). Instead, among other things, it "suggest[s] defendant's guilt by association." Ibid.; see also Estelle v. Williams, supra, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126; State v. Carrion-Collazo, 221 N.J.Super. 103, 534 A.2d 21 (App.Div. 1987), certif. denied, 110 N.J. 171, 540 A.2d 171 (1988). Accordingly, the Artwell Court held that "going forward, a trial court may not require a defendant's witness to appear at trial in prison garb." 177 N.J. at 539, 832 A.2d 295.
In the present case, the trial judge did not establish the need for restraints as Artwell and the decisions that preceded it require, but instead surrendered his discretion to the sheriff's officers in the courtroom. When presented with the choice of summoning additional officers or imposing restraints, the judge without further discussion chose the latter. When a similar circumstance arose in the context of restraint of a defendant in Damon, we stated:
It was inexcusable for the trial judge to require petitioner to remain handcuffed in the presence of the jury merely because there was a shortage of courtroom security personnel. A trial judge should not surrender the control of his or her courtroom to a claimed need for courtroom security at the sacrifice of petitioner's right to a fair trial. Security measures should have been established which would have permitted petitioner to appear in the presence of the jury without handcuffs.
[286 N.J.Super. at 497-98, 669 A.2d 860.]
When a risk exists that the jury will render its decision on a basis other than the evidence, such as here, "defendant's right to a fair trial requires that the risk be justified by an essential state interest." Artwell, supra, 177 N.J. at 538, 832 A.2d 295. If a record had established the need for the restraints, they could in a proper exercise of discretion have been ordered. Ibid. However, the absence of record requires that we reverse defendant's conviction. For the reasons that we have previously discussed, we apply Artwell's holding regarding prison clothing, as well, to any State's witness in a future trial in this case.
We note that conclusions similar to ours with respect to prison garb and restraints upon State's witnesses have been accepted by the Washington Supreme Court in its *1172 lengthy opinion in Washington v. Rodriguez, 146 Wash.2d 260, 45 P.3d 541 (2001), a case cited favorably in Artwell in connection with its discussion of defense witnesses. 177 N.J. at 536, 832 A.2d 295.[4] In Rodriguez, which like the present matter concerned a participant in the crime who testified pursuant to a plea agreement against the defendant while in prison garb, handcuffs and leg shackles, the Court held that "[t]o fully protect the defendant against being convicted by impermissible factors rather than solely by the evidence, the rule against physical restraints, without a showing of necessity, must apply to all inmate witnesses." 45 P.3d at 545.[5] The Court advanced, as a reason for the prohibition of prison garb and restraints other than the effect on the witness' credibility, the fact that:
The witness in this case, while clad in clothing clearly denoting guilt and his status as a prisoner, testified to a criminal association with the defendant. This associated guilt and prisoner status had the potential to prejudice the presumption of innocence to which the defendant was entitled.
[Id. at 544.]
Similarly, Muhammad's appearance undeniably prejudiced defendant, since it provided visual reinforcement to other evidence of his guilt, and suggested to the jury that the State regarded the crime committed to have been of sufficient violence to justify the use of substantial and cumbersome restraints. Reversal is thus required.

IV.
In light of our determination that defendant's conviction must be vacated and the matter retried, we do not address defendant's remaining arguments on appeal. We trust, however, that any of defendant's relatives attending a retrial will be instructed as to conduct that is appropriate in the circumstances, so that the jury's concerns regarding their personal safety, brought to the attention of the court in the *1173 initial trial and appropriately addressed at the time, will not be repeated.
Reversed and remanded for a new trial.
NOTES
[1] The charge was not requested, and thus its absence must be judged by a plain error standard.
[2] See, e.g., State v. Mance, 300 N.J.Super. 37, 51, 691 A.2d 1369 (App.Div.1997) (permitting restraints).
[3] The County Sheriff has statutory responsibility to provide security for the criminal courts "in the manner established by the assignment judge in the county." N.J.S.A. 2B:6-1d. "Thus, although the Sheriff is the presumed expert in these matters and has primary responsibility to provide for security, it is the non-delegable duty of a trial court ultimately to approve such measures consistent with constitutional protections to which all defendants are entitled." Zhu, supra, 165 N.J. at 557, 761 A.2d 523.
[4] Rodriguez is one of the few decisions to discuss this issue in any detail. In the following cases, the appearance of a prosecution witness in prison garb was permitted with little analysis. United States v. Brooks, 125 F.3d 484 (7th Cir.1997) (judge did not abuse discretion in denying mistrial when it was clear that State's witness was incarcerated for an unrelated crime); Cook v. Beto, 425 F.2d 1066 (5th Cir.) (with no substantive discussion, holding that habeas corpus relief was not required because defendant suffered no prejudice when his co-defendant was brought into the court room for identification in prison clothing), cert. denied, 400 U.S. 944, 91 S.Ct. 248, 27 L.Ed.2d 249 (1970); People v. Walters, 796 P.2d 13 (Colo.App.1990) (permitting prosecution witness to appear in prison clothing over defendant's objection does not constitute prejudicial error), cert. denied, 1990 Colo. Lexis 501 (1990); State v. Charron, 743 S.W.2d 436 (Mo.App.1987) (objection to co-defendant's appearance in prison garb waived); People v. Sledge, 92 Ill.App.3d 1051, 48 Ill.Dec. 381, 416 N.E.2d 412 (1981) (holding without discussion that defendant was not prejudiced by fact that witness for the State wore jail clothing when called to testify); State v. Naples, 94 Ohio App. 33, 114 N.E.2d 302 (that the State called co-defendant to testify in jail clothes did not constitute reversible error), app. dismissed, 158 Ohio St. 231, 108 N.E.2d 280 (1952). Contra, see State v. Yates, 174 Conn. 16, 381 A.2d 536 (1977) (recognizing potential for prejudice in prison attire but finding it nullified by witnesses' own testimony regarding their prior felony convictions and their experiences in prison). See also Michelle Migdal Gee, Annotation, Propriety and Prejudicial Effect of Witness Testifying While in Prison Attire, 16 A.L.R.4th 1356 (1982, updated May 2001).
[5] The Rodriguez Court affirmed defendant's conviction, but only because it found that the defendant did not object to the witness' appearance and failed to demonstrate that only a new trial could have cured the prejudice caused by it. Ibid.