897 A.2d 1085 (2006)
385 N.J. Super. 486
STATE of New Jersey, Plaintiff-Respondent,
v.
Jose HERRERA, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted April 26, 2006.
Decided May 11, 2006.
*1086 Yvonne Smith Segars, Public Defender, for appellant (Michele C. Buckley, Designated Counsel, of counsel and on the brief).
Zulima V. Farber, Attorney General, for respondent (Karen Fiorelli, Deputy Attorney General, of counsel and on the brief).
Before Judges STERN, GRALL and KIMMELMAN.
The opinion of the court was delivered by
STERN, P.J.A.D.
Defendant was charged with possession of a controlled dangerous substance (cocaine), N.J.S.A. 2C:35-10a(1) (count one); possession of a controlled dangerous *1087 substance with intent to distribute, N.J.S.A. 2C:35-5a(1) and 2C:35-5b(2) (count two); possession with intent to distribute within 500 feet of a public housing facility, public park, or public building, N.J.S.A. 2C:35-7.1 (count three); and use of a paging device while engaged in the commission of, or an attempt to commit, certain crimes, N.J.S.A. 2C:33-20 (count four). After his motion to suppress the evidence was denied, defendant was convicted on counts one, two and four. On January 29, 2004, we affirmed defendant's conviction for possession of a controlled dangerous substance, but reversed the other convictions and remanded for a new trial on counts two and four. We concluded that admission of hearsay evidence conveyed to, and reported by, the investigating detective to another detective could not be deemed harmless error with respect to those convictions.
Defendant was thereupon retried and convicted of possession of a controlled dangerous substance with intent to distribute (count two),[1] but found not guilty of illegal use of the paging device (count four). He was sentenced to seven years in the custody of the Commissioner of the Department of Corrections for the possession with intent to distribute. The judge also imposed the requisite fines and suspended defendant's driver's license for six months.[2]
On this appeal defendant argues:
POINT I THE STATE FAILED TO MEET ITS BURDEN OF PROOF BEYOND A REASONABLE DOUBT THAT MR. HERRERA POSSESSED THE COCAINE WITH THE INTENT TO DISTRIBUTE AND THE GUILTY VERDICT ON THAT CHARGE WAS AGAINST THE WEIGHT OF THE EVIDENCE AND MUST BE REVERSED. (Not Raised Below)
POINT II THE TRIAL COURT ERRED IN FAILING TO DETERMINE WHETHER MR. HERRERA VOLUNTARILY WAIVED HIS RIGHT TO WEAR CIVILIAN CLOTHING AT TRIAL WHICH WAS A VIOLATION OF MR. HERRERA'S CONSTITUTIONAL RIGHT TO A FAIR TRIAL UNDER THE DUE PROCESS CLAUSE.
POINT III THE TRIAL COURT ERRED IN REFUSING TO RE-HEAR DEFENDANT'S PRO-SE MOTION TO SUP[P]RESS THE DRUGS SEIZED FROM DEFENDANT.
POINT IV THE CUMULATIVE EFFECT OF THE ERRORS AT DEFENDANT'S TRIAL DEPRIVED HIM OF THE RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL.
POINT V UNDER THE NEW JERSEY SUPREME COURT'S RECENT DECISIONS IN STATE V. NATALE AND STATE V. ABDULLAH, THIS CASE MUST BE REMANDED TO THE TRIAL COURT FOR RESENTENCING CONSIST[E]NT WITH THOSE OPINIONS.

I.
The trial proofs reveal that on January 9, 2001, Detective Christopher Barber of *1088 the Atlantic City Police Department received information from Detective James Brennan requiring his "assistance at the Tropicana [casino] bus depot."[3] At Brennan's direction, Barber went to the Tropicana. There he "stopped . . . and pat[ted] down" defendant and found a "knotted sandwich bag with white powder" and a "folded piece of tinfoil," which also contained white powder. Both specimens "tested positive for cocaine." Defendant also possessed a Greyhound bus ticket from New York to Atlantic City, $138 in currency, and a pager. The gross weight of the cocaine in the "sandwich baggie" was 28.83 grams.
The State presented the testimony of Detective Ronald DiGiovanni as an expert in the field of illegal narcotics. In response to a hypothetical question, DiGiovanni opined that it appeared defendant "just came back from New York after purchasing cocaine . . . to distribute it," and that the amount of cocaine in the plastic bag was "more than someone would have for personal use if they are hanging around a bus station at a casino." Detective DiGiovanni testified that it would appear that someone with that much cocaine who had arrived on a bus two hours earlier came to the casino to "get rid of it and sell it and make money."
Detective DiGiovanni also opined that the small foil package had about one gram of cocaine in it, and that based upon its size, it was probably for defendant's "own personal use." He said a person caught with that amount of cocaine would only be charged with possession, and not intent to distribute, because the amount was too small. The detective further testified that a pager is a "valuable tool" in the drug business because it enables a dealer to "screen" his calls and decide whether to deal with the caller. The pager also allows the dealer and the caller to use a "code" to communicate the amount requested and the price.
Detective DiGiovanni further testified that the bus ticket from New York was "important because New York is a source city" to which dealers go to buy narcotics because they are less expensive there. The detective opined that defendant must have spent at least approximately $650 on the drugs.

II.
Defendant first contends that the State failed to prove beyond a reasonable doubt that he possessed cocaine with the intent to distribute and that his conviction must be reversed. However, defendant did not file a motion for a new trial, and a contention on appeal that a jury verdict was against the weight of the evidence "shall not be cognizable on appeal unless a motion for a new trial on that ground was made in trial court." R. 2:10-1; see also, e.g., State v. Saunders, 302 N.J.Super. 509, 524, 695 A.2d 722 (App.Div.), certif. denied, 151 N.J. 470, 700 A.2d 881 (1997). But see State v. Smith, 262 N.J.Super. 487, 511-12, 621 A.2d 493 (App.Div.), certif. denied, 134 N.J. 476, 634 A.2d 523 (1993). In any event, we find no "miscarriage of justice under the law," R. 2:10-1, because the "trier of fact could rationally have found beyond a reasonable doubt that the essential elements of the crime were present." Smith, supra, 262 N.J.Super. at 512, 621 A.2d 493 (quoting State v. Carter, 91 N.J. 86, 96, 449 A.2d 1280 (1982)).
Defendant did not object to the detective's testimony as an expert and the State is permitted to ask an expert, based *1089 upon the facts adduced at trial, for an opinion on whether the drugs were for personal use or distribution. State v. Summers, 176 N.J. 306, 314-15, 823 A.2d 15 (2003). The expert could give his opinion "that possession of these drugs was for the purpose of distribution[,]" and "the opinion is not objectionable even though it embraces ultimate issues that the jury must decide." Id. at 314, 823 A.2d 15 (quoting State v. Odom, 116 N.J. 65, 79, 560 A.2d 1198 (1989)). See also State v. Nesbitt, 185 N.J. 504, 515-18, 888 A.2d 472 (2006).[4]

III.
Defendant contends that the trial court erred in refusing to hear his pro se motion to renew the motion to suppress which was denied at his first trial. However, we affirmed the denial of his motion to suppress on the appeal from the first conviction, and defendant did not seek to reopen the matter before us. Therefore, the trial court was bound by our decision on the issue. See State v. Hale, 127 N.J.Super. 407, 410, 317 A.2d 731 (App. Div.1974); see also State v. Toth, 321 N.J.Super. 609, 612-17, 729 A.2d 1069 (App.Div.1999), certif. denied, 165 N.J. 531, 760 A.2d 784 (2000) (holding that when the searching officer detects a "bulge" during a Terry stop, which he determines to be CDS based upon "plain feel," the search is lawful); State v. Cargill, 312 N.J.Super. 13, 17, 711 A.2d 318 (App.Div.), certif. denied, 156 N.J. 408, 719 A.2d 640 (1998). Moreover, the motion was untimely, see R. 3:5-7(a),(f); R. 3:9-1(c),(d), and defendant does not now argue either the merits of the motion or seek reconsideration of our prior holding on the issue.

IV.
Defendant contends that he did not waive his right to wear civilian clothing at his retrial, and that his conviction must be reversed because he was compelled to wear his jail clothes during the trial.[5] Before jury selection commenced, the judge asked the defendant if he had clothes to wear at trial because defendant was wearing his jail clothing. Defendant answered that he did not have clothes to wear and had attempted to alert the court to that fact. A sheriff's officer indicated that "[t]he jail has clothes [but defendant refused] to wear them." In response, defendant stated, "[t]hey give me a T-shirt they find in the garbage trash," which he refused to wear. The sheriff's officer offered to show the judge the clothes defendant was offered, but the judge stated, "I don't need to see them." The judge further stated:
He has an absolute right to have civilian clothes, and the jail has civilian clothes. We're not gong to take you to Boyds and get you a $1,500 suit, but you do have clothes available to you, and I suggest you wear them, okay?
Defense counsel stated that he had been informed that defendant would be given "some form of appropriate wear," but did not see the clothes defendant claimed he was given to wear. Counsel indicated that appropriate clothing was requested, so he hoped the attire was "not as inappropriate" as defendant suggested.
The trial judge advised defendant to wear the civilian attire provided to him. After discussing another issue concerning defendant's lack of right to confront the confidential informant, the judge told defendant *1090 to "go downstairs and get dressed. We're going to pick a jury in about 15 minutes." A recess was then taken.
When the court was back in session, the following colloquy ensued:
THE COURT: All right. Mr. Herrera, are you not going to get changed?
[DEFENDANT]: What I want is my motion to be heard, my motion to suppress the evidence; that's the reason I'm here.
THE COURT: Your motion has already been heard. It's not going to be heard again. My question to you is simply: Are you going to get changed or are you going to try the case in your prison garb?
[DEFENDANT]: I submitted it. I sent in the motion. I haven't heard it.
THE COURT: I'll ask him one more time: Are you going to get changed or are you going to try the case in your prison garb?
[DEFENDANT]: What clothes are you talking about? It's the same thing. The only thing is going to change is the color.
THE COURT: Well, that's enough. They have clothes for you from the jail, I suggest that you put them on.
[DEFENDANT]: All they have is a black T-shirt and black sweat pants. It's the same thing almost that I have[,] just a different color. I would like to have a little jacket and tie.
THE COURT: Tell him he didn't have that the first time this case was tried. We are not going to take him out of GQ and take him to Boyds. Tell him he is going to get what is downstairs.
[DEFENDANT]: I'm not going to wear that.
THE COURT: You don't want to wear that?
[DEFENDANT]: I'll stay with this, that's fine.
THE COURT: That's fine? Okay. That's your choice then. That's your choice.
Defense counsel then became involved in the colloquy:
[DEFENSE COUNSEL]: I would for the record request that he go down and change as well. I asked him before 
THE COURT: Well, tell him that the jury is going to know that he is in jail unless he gets changed.
[DEFENDANT]: That's fine. I am just going to wear this. What I want for you is to hear my motion [to suppress].
THE COURT: Your motion has been heard and I don't want to hear anything more about a motion.
. . . .
THE COURT: Ask him one more time does he want to change or stay in those clothes?
[DEFENDANT]: No, no, no.
. . . .
THE COURT: . . . [T]he taxpayers are going to pay for an interpreter for you even though you speak very good English. We'll have the interpreter sit here for you, okay? Are we ready for the jury?
[COURT CLERK]: I have to bring them up.
THE COURT: Why don't you get them. I'll give him one last opportunity. This will be the fifth time I'm telling him he ought to change, and if he doesn't change, that's fine, the jury will know that he's incarcerated and that's it; then once the jury is here, we'll be right back in.
At the very outset of the trial before jury selection, the judge advised the jury:

*1091 I should [] note that as you obviously see the defendant, he is sitting there in what is commonly known as "prison garb" or "jail garb"; you're not to hold that against him in any way, shape or form. You don't know why he is in prison. You shouldn't speculate about why he is in prison. It should not enter into your deliberations whatsoever, and it should not consume any of your time whatsoever.
Defendant submits that he expressed a desire to wear civilian clothing, but there was little difference between the prison garb he wore and the clothes he was offered. Defendant also notes that the trial judge refused to examine the civilian clothing offered to him, and suggests that the judge would have understood his refusal had he looked at what was offered. Defendant further asserts actual prejudice because the events presented at trial occurred in January 2001, and the retrial was held on September 20 and 21, 2004, leading the jury to speculate that he was incarcerated on other charges.[6] Defendant contends that the jury may have believed he was serving a sentence for another offense and had a criminal record.
The State submits that defendant understood he had the right to wear civilian clothes, of which the trial judge advised him, and that defendant repeatedly waived that right.[7] The State also contends that even if defendant did not like the clothes he was offered, they were civilian clothing that would have cured the potential for prejudice. Furthermore, the State asserts that defendant's refusal to wear civilian clothing is consistent with the uncooperative behavior he exhibited throughout trial.
In Estelle v. Williams, 425 U.S. 501, 502, 96 S.Ct. 1691, 1692, 48 L.Ed.2d 126, 129 (1976), the United States Supreme Court considered "whether an accused who is compelled to wear identifiable prison clothing at his trial by a jury is denied due process or equal protection of the laws." In that case, the defendant expressly asked an officer at the jail for civilian clothes but his request was denied. Ibid. The Supreme Court held that the State cannot compel a defendant to stand trial in prison garb. Id. at 512-13, 96 S.Ct. at 1697, 48 L.Ed.2d at 135. However, the Supreme Court explained that the trial judge did not have an affirmative duty to ask a defendant or his counsel whether he intended to proceed to trial in prison garb, and the defendant had an obligation to object. Ibid.
In State v. Carrion-Collazo, 221 N.J.Super. 103, 111, 534 A.2d 21 (1987), certif. denied, 110 N.J. 171, 540 A.2d 171 (1988), we noted that "the federal rule of law is that where defendant is represented by counsel, a waiver of defendant's right not to be compelled to appear at trial in prison garb is implied from defendant's failure to object." In that case, neither defendant nor his counsel objected to the fact that defendant was tried in his jail clothing. Ibid. In fact, wearing the prison garb was part of the "defense trial strategy," which counsel communicated to the court that the defendant understood. Ibid. Thus, we held that the State did not "bear the burden of showing a voluntary waiver[,]" and that any error was harmless because the trial judge instructed the jury not to make any inferences from the prison garb and conducted a voir dire of the jury on the issue. Ibid.
Nevertheless, we concluded that in the future, trial judges should personally question criminal defendants "concerning their desire to relinquish the right to appear in civilian clothing[,]" and accept this waiver *1092 only through "a knowing, intelligent and voluntary waiver on the record. . . ." Id. at 112, 534 A.2d 21. We said:
[E]ven in the absence of a constitutional requirement, future criminal defendants appearing for a jury trial in prison garb should be personally questioned by the trial judge concerning their desire to relinquish the right to appear in civilian clothing and that ... right should be given up only by means of a knowing, intelligent and voluntary waiver on the record before the trial judge.
[Ibid. (emphasis added).]
Additionally, we noted that the "cost and inconvenience" of providing appropriate dress for trial was "fully warranted" when a defendant requested civilian clothing, and thus a request by a defendant or counsel to obtain civilian clothing "may not be denied." Id. at 113, 534 A.2d 21.[8]
We cannot fault the trial judge for the way he handled a recalcitrant defendant, but the judge never examined the clothing defendant was offered and declined to wear, and there is no neutral description of this clothing. We agree with the judge that a defendant cannot be allowed to reject any clothing that does not fit his taste and style. However, we also believe the defendant has a right not to appear in civilian clothing that may appear distasteful or disrespectful to a reasonably objective juror.
Moreover, our Supreme Court has noted that New Jersey courts have been "especially vigilant in protecting a defendant's right not to be compelled to appear at trial in prison attire" in order to protect the presumption of innocence. State v. Maisonet, 166 N.J. 9, 18, 763 A.2d 1254 (2001). See also Artwell, supra, 177 N.J. at 534-35, 539, 832 A.2d 295; State v. Russell, 384 N.J.Super. 586, 589, 895 A.2d 1163 (App. Div.2006). In Maisonet the Supreme Court reversed a conviction because "defendant was denied basic necessities while in custody" and "[a]s a direct result of that treatment, defendant appeared dirty and unkempt during most of the trial." Id. at 19, 763 A.2d 1254. The Court found that defendant's appearance "undoubtedly had the potential to diminish his credibility before the jury." Ibid.
The circumstances in Maisonet would be analogous to the present case if defendant was compelled to choose between wearing prison attire or civilian clothing which would appear inappropriate and have the potential to diminish defendant's standing before the jury. A trial judge must be assured that a defendant is not forced to choose only between prison garb and civilian clothing which could prejudice him or her before the jury. Accordingly, we remand to develop the record with respect to a description of the clothing defendant was offered in place of his jail clothing.
In State v. Spellman, 562 So.2d 455, 456 (La.1990), the defendant objected to standing trial in prison attire and asked for civilian clothes instead. According to defendant, the deputies offered him clothes that belonged to another inmate, were much too big, and had the name of another state jail emblazoned across the back. Ibid. The trial court did not examine the proffered clothes, and accepted the deputy's assertion that they were suitable "at face value." Ibid. Defendant rejected the *1093 clothes and instead wore his prison garb to trial. Ibid. On appeal, the Louisiana Supreme Court reversed defendant's conviction, holding that the offer to substitute defendant's jail uniform for a shirt embossed with the name of another jail gave defendant "no choice at all." Id. at 457. The court concluded that "[a] defendant may insist he appear before jurors with all the dignity of a free man, presumed innocent until determined otherwise . . . ." Id. at 456.
Likewise, because trial judges in New Jersey are required to ensure "that the presumption of innocence is not lost at any stage in the proceedings because of extraneous, impermissible factors such as a defendant's physical appearance[,]" Maisonet, supra, 166 N.J. at 22, 763 A.2d 1254, we hold that trial judges must ensure, as part of the "protective procedures," that the civilian clothes offered to a defendant are of such reasonable size, cleanliness, and quality as to not have "the potential to diminish [defendant's] credibility before the jury." Id. at 19, 763 A.2d 1254.
While a defendant does not "have the right to dictate to the court which civilian clothing he will wear[,]" Colley v. State, 225 Ga.App. 198, 483 S.E.2d 355, 356 (1997) (conviction affirmed where defendant elected to wear prison clothes instead of clothing he wore on the day of his arrest when no other clothing was brought to him while he was incarcerated), when a defendant on trial has no civilian clothing of his own and rejects the clothing offered to him by the State, the trial court's assessment of whether such defendant executed a "knowing, intelligent and voluntary waiver" of his right not to wear prison garb must include an assessment of whether the civilian clothes that defendant rejected were of reasonably suitable quality, cleanliness and design. See Spellman, supra, 562 So.2d at 456-57. A trial judge should not require an indigent defendant to go to trial in his prison garb unless and until the judge determines that the defendant was offered, and rejected, civilian clothes that were reasonable and adequate under the circumstances.

V.
We remand for further proceedings addressed to the waiver of defendant's right to appear in civilian clothing at trial. We emphasize that we do not reverse the conviction, and that a new trial is not warranted if a record is constructed to demonstrate that the clothing he was offered would have been sufficient so as not to appear disrespectful to a reasonably objective juror. Errors and incomplete records in the trial court when related to pretrial decisions which might not affect what was presented to, or observed by, the jury do not require reversal of a conviction unless the remand proceedings result in a conclusion that a new trial is warranted. See, e.g., State v. Kelly, 61 N.J. 283, 294-95, 294 A.2d 41 (1972).

VI.
In sum, the trial judge shall determine if the clothing defendant was offered would have unfairly prejudiced him before the jury under the standard we announce today. If so, a new trial shall be ordered. If not, then defendant waived his right to wear civilian clothes, and the conviction and seven-year sentence for second-degree possession of CDS with intent to distribute shall stand, see State v. Natale, 184 N.J. 458, 878 A.2d 724 (2005), and an amended judgment shall be entered to merge the conviction on count one into the conviction on count two.
The matter is remanded for further proceedings consistent with this opinion.
NOTES
[1] The jury found that defendant possessed more than one-half ounce of cocaine.
[2] The judgment appears to note that the dismissed count three merges into the conviction. It does not vacate or merge the conviction for simple possession from the first trial. However, on the first appeal we noted that the simple possession conviction would merge with the possession with intent in the event of a conviction therefor at the retrial. The sentencing transcript reveals that this is what the judge intended to do. A corrected judgment must be entered on the remand.
[3] It is clear the State did not want to present the same hearsay evidence which led to reversal of the first conviction.
[4] Defendant raises no issue concerning the formulation of questions or the jury instructions in this regard.
[5] "Distinctive prison garb is clothing that allows the jury to visibly identify the wearer as a prisoner[.]" State v. Artwell, 177 N.J. 526, 534 n. 1, 832 A.2d 295 (2003) (internal citations and quotations marks omitted).
[6] The jury was not advised about the prior trial and appeal.
[7] The matter was also discussed at the first trial.
[8] Recently our Supreme Court employed the Carrion-Collazo rationale in support of its conclusion that a defendant or defense witness could not be required to appear before a jury in restraints "absent compelling reasons[,]" or to testify in prison clothing. State v. Artwell, 177 N.J. 526, 534-35, 539, 832 A.2d 295 (2003). We recently extended this principle to prosecution witnesses. State v. Russell, 384 N.J.Super. 586, 589, 895 A.2d 1163 (App.Div.2006).