15 A.3d 1

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT,
v. JAMIYL DOCK, DEFENDANT–RESPONDENT.

Argued January 18, 2011—Decided March 8, 2011.

240

*Sara A. Friedman,* Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for appellant (*Robert D. Laurino,* Acting Essex County Prosecutor, attorney).

*Paul J. Casteleiro* argued the cause for respondent.

Justice RIVERA–SOTO delivered the opinion of the Court.

In 1999, defendant Jamiyl Dock was convicted of and sentenced for the murder of Lamont Stewart and the shooting of Maurice Allen in broad daylight on a Newark street; his convictions and sentence were affirmed by the Appellate Division and this Court denied defendant's petition for certification. In 2004,

defendant filed a petition for post-conviction relief (PCR), claiming, among other things, (1) that his trial counsel was ineffective when he "permitted, without objection, Maurice Allen to testify as a defense witness while handcuffed and failed to request a jury instruction forbidding the consideration of the restraints in determining the witness's credibility and/or the defendant's guilt[,]" and (2) that he was "deprived of his right to due process of law, a fair trial and to summon witnesses on his behalf ... when his star witness, Maurice Allen, was forced to testify in restraints and/or the court failed to issue[ ] an instruction that the restraints could not be used to determine Allen's credibility or the defendant's guilt." Those assertions were based on *State v. Artwell*, 177 *N.J.* 526, 832 *A.*2d 295 (2003), a decision rendered four years *after* defendant was convicted and sentenced, and two years *after* defendant's direct appeals were exhausted. Defendant's PCR application initially was denied but, after a remand with directions was ordered by the Appellate Division, the Law Division deemed itself compelled to grant defendant's PCR application, vacate his convictions and return the case to the trial docket.

We reverse and reinstate defendant's convictions and sentence because defendant would be eligible for the benefit of the rule in *Artwell* if and only if that decision were given full retroactive effect, a step that is unwarranted under New Jersey's well-settled retroactivity analysis.

## I.

Although the factual basis underlying this appeal is readily recounted, its procedural twists and turns are many.

Defendant was convicted of the August 1997 daylight shooting of both Stewart and Allen, resulting in Stewart's death. At defendant's trial, the State elected not to call the surviving victim—Allen—as a witness in its case-in-chief, putatively because Allen was then serving a lengthy prison term for a crime committed while he had been on probation, and he had been engaged in several crimes, including robbery and an illegal drug transaction, at the time of the shooting. Although defendant's counsel opposed

calling Allen as a defense witness, defendant insisted on it; at the close of the State's case, defense counsel requested an adjournment until the following morning to allow counsel sufficient time "not only to talk to Mr. Allen about what his possible testimony might be in the event of what has transpired in the trial; and also, to meet with the family and make a decision that both myself and the family can live with as to how to proceed with the defense of their son." The next morning, Allen was produced in court wearing civilian garb but with his hands handcuffed behind his back. Defendant's counsel claimed to have been surprised by that, but he neither made mention of it on the record nor requested a limiting instruction from the court. Rather, defense counsel's first questions of Allen were:

Q. Good morning, Mr. Allen. How are you?
A. Fine.
Q. Mr. Allen, are you presently incarcerated?
A. Yes.
Q. That's why you've got the handcuffs on. Right?
A. Yes.
Q. And how long have you been incarcerated?
A. I've been incarcerated for like a year-and-a-half now.

Shortly thereafter, Allen asked for water. In response to the court's inquiry if Allen wanted water, Allen noted that he had water but that he had "handcuffs on; I can't drink it."

During that direct examination, defense counsel probed Allen's background. Allen ultimately admitted that, at the time he was shot, he had just purchased heroin; that when he was at the hospital being treated for his gunshot wound, he gave a false name because he had outstanding warrants for his arrest; that, for a period of at least two months, he had avoided speaking to the police because he did not want to go to jail; and that he had been arrested for an armed robbery in Irvington.[1] Also on direct examination, defense counsel asked that Allen draw a diagram of the street where the shooting occurred. Because Allen's hands

---

[1] During cross-examination, Allen further admitted that, in October 1986, he was convicted of attempted burglary and receiving stolen property and was

were handcuffed behind his back, the court excused the jury and, out of the jury's presence, ordered the handcuffs repositioned so that Allen's hands would be on his front, thereby allowing Allen to draw the requested diagram. That change also allowed Allen to drink the water he had requested earlier. During his trial testimony, Allen stated that defendant was not the person who shot him and shot and killed Stewart.

Defendant was convicted of the first-degree purposeful or knowing murder of Stewart, in violation of *N.J.S.A.* 2C:11–3(a)(1) and (2); the second-degree aggravated assault of Allen, in violation of *N.J.S.A.* 2C:12–1(b); the third-degree unlawful possession of a handgun, in violation of *N.J.S.A.* 2C:39–5(b); and the second-degree possession of a firearm for an unlawful purpose, in violation of *N.J.S.A.* 2C:39–4(a)(1). Defendant was sentenced to an aggregate of fifty years' imprisonment, subject to the provisions of the No Early Release Act, *N.J.S.A.* 2C:43–7.2. On direct appeal, and in an unpublished opinion rendered in October 2000, the Appellate Division affirmed defendant's convictions and sentence; defendant's petition for certification was denied on February 14, 2001. *State v. Dock,* 167 *N.J.* 630, 772 *A.2d* 931 (2001).

In 2004, defendant, acting pro se, filed a PCR application.[2] That application seemingly was misplaced and, in 2007, defendant,

---

sentenced to a five-year probationary term; that, in January 1993, he again was convicted of receiving stolen property, again was placed on probation—he later violated the terms of that probation and was sentenced to prison; that, in May 1993, he again was convicted of receiving stolen property and again was sentenced to probation; that, in June 1994, he was convicted of burglary, two counts of aggravated assault and resisting arrest and was sentenced to five years' incarceration; that, in July 1994, he again was convicted of receiving stolen property and was sentenced to a five-year prison term; and that, in June 1998, he was convicted of possession of a controlled dangerous substance with the intent to distribute it within 1,000 feet of a school, unlawful possession of a weapon and possession of a weapon for an unlawful purpose and was sentenced to seven years' imprisonment, subject to a three-year period of parole ineligibility. Allen was serving that latter sentence when he testified at defendant's trial.

[2] That application was timely: defendant was sentenced on March 19, 1999 and filed his PCR application on February 18, 2004, within the required five-year

through counsel, was granted leave to file a new PCR application as within time. In an unpublished opinion dated August 7, 2008, the PCR court—the same judge who had presided over defendant's trial—remarked that defendant had averred that "his [trial] attorney was ineffective and his trial was constitutionally defective on due process grounds on the basis that Maurice Allen, the prime defense witness[,] was 'permitted' and 'forced' to testify in restraints-handcuffs." It described defendant's assertion as follows: that "Allen's credibility was undermined as a consequence, which inured to the detriment of the accused—his guilt. More specifically, the defendant criticizes counsel for not objecting and requesting [a] cautionary jury instruction." Assessing Allen's contribution to defendant's case at trial, the PCR court wryly noted:

> Given Mr. Allen's status and witness profile at the time—eight convictions for felony offenses, admitted heroin user simultaneous to the shooting incident, perpetrator of a robbery earlier on the day he was shot and a current inmate at the New Jersey State Prison serving seven years with three years of parole ineligibility imposed on June 1, 1998—his value as a witness and his credibility were dubious.

Applying the well-established two-prong test for ineffective assistance of counsel claims set forth in *Strickland v. Washington*, 466 *U.S.* 668, 687, 104 *S.Ct.* 2052, 2064, 80 *L.Ed.*2d 674, 693 (1984)—that is, that "the defendant must show that counsel's performance was deficient" and that "the defendant must show that the deficient performance prejudiced the defense"—and adopted by this State in *State v. Fritz*, 105 *N.J.* 42, 53–58, 519 *A.*2d 336 (1987), the PCR court concluded that "[defense c]ounsel's immediate reference to Allen's incarceration and to the handcuffs was irrefutably a trial strategy employed by the defense." It explained that "[w]hat was contemplated was to blunt the 'sting' from the impending impeachment ... of Allen [by use of his] prior criminal record by the prosecutor." Underscoring that "Allen's testimony can only be characterized as deleterious to [defendant]'s case[,]" the PCR court denied defendant's PCR application "with

---

limitations period. *See R.* 3:22–12(a)(1) (requiring that PCR petition must be filed no later "than 5 years after the date of entry pursuant to *Rule* 3:21–5 of the judgment of conviction that is being challenged").

the exception that a re-sentencing hearing shall be scheduled to modify and correct the present illegal sentence." [3]

Defendant appealed and, in an unpublished per curiam opinion, the Appellate Division "[r]eversed and remanded for an evidentiary hearing on defendant's due process and ineffective assistance of counsel claims, related to Allen's appearance before the jury while shackled." Acknowledging that *Artwell's* ban on the use of restraints on defense witnesses was not adopted by this Court until two years after defendant had exhausted all of his direct appeals, and that published opinions of the Appellate Division conflicted on whether *Artwell's* ban was to receive retroactive application, *compare State v. King,* 390 *N.J.Super.* 344, 363–64, 915 *A.*2d 587 (App.Div.) (applying *Artwell's* ban on physical restraints to case on direct appeal), *certif. denied,* 190 *N.J.* 394, 921 *A.*2d 448 (2007), and *State v. Russell,* 384 *N.J.Super.* 586, 592–93, 895 *A.*2d 1163 (App.Div.2006) (same), *overruled on other grounds by State v. Kuchera,* 198 *N.J.* 482, 969 *A.*2d 1052 (2009), *with State v. Echols,* 398 *N.J.Super.* 192, 214–15, 941 *A.*2d 599 (App.Div.2008), *rev'd on other grounds,* 199 *N.J.* 344, 972 *A.*2d 1091 (2009), the panel nevertheless reasoned in the negative that "no court has ever squarely held in a published decision that *Artwell's* ban on indiscriminate shackling of defense witnesses should not be given retroactive application." It therefore concluded, without the aid of a fulsome retroactivity analysis, that "if the holding in *Artwell* is applied retroactively, which we conclude it should be, defendant would be entitled to relief, unless he waived his right to object to Allen's shackling." (footnote omitted).

---

[3] The PCR court noted that, at the time of defendant's offense, the provisions of the No Early Release Act, *N.J.S.A.* 2C:43–7.2, did not apply to the crime of murder, a conclusion the State conceded. *See State v. Manzie,* 335 *N.J.Super.* 267, 762 *A.*2d 276 (App.Div.2000), *aff'd by an equally divided court,* 168 *N.J.* 113, 773 *A.*2d 659 (2001). Defendant's previously imposed sentence of fifty years' imprisonment subject to a period of parole ineligibility of forty-two years, five months and two days was vacated; he was resentenced to a fifty-year term of imprisonment subject to a thirty-year term of parole ineligibility.

Concerned that the record before it was insufficient to gauge defendant's assertions of due process violations and ineffective assistance of counsel, the panel concluded,

[o]n balance, ... that the appropriate remedy is a remand to develop a record on the question of whether defendant and his attorney made a conscious decision to permit the restraints so as to blunt the damage from Allen's testimony if Allen unexpectedly turned on defendant and named him as the shooter, or whether for any other reason defendant waived his right to object to Allen's appearance before the jury while restrained.

It explained that its "lingering concern—that tactical considerations did in fact motivate defense counsel's actions—causes us to stop short of ordering a new trial, and to instead order a remand where the issue of waiver of defendant's due process rights can be aired." In its view, "[t]he [PCR court]'s refusal to grant an evidentiary hearing was error, and we now remand for such hearing."

The panel provided additional guidance. It commanded that, "[o]n remand, the judge should determine, after considering the testimony of trial counsel, whether counsel waived his right to object to the handcuffing of Allen for any legitimate tactical or strategic reasons." It instructed that, if the remand PCR court determined that "trial counsel's failure to object to the shackling, and failure to request a curative instruction, were the result of counsel's legitimate strategy decision," the PCR court "should also take testimony on whether defendant consented to such decision, and whether defendant's consent constitutes a waiver of his right to object to Allen's shackling before the jury." It reasoned that "[i]f, after conducting an evidentiary hearing, the judge answers all of those questions in the affirmative, then the judge should deny defendant's ineffective assistance of counsel claim." It also explained that defendant's PCR application should be granted and a new trial ordered if the PCR court concluded "either that such strategy decision does not fall within the broad range of acceptable professional performance the Court identified in *Fritz, supra,* 105 *N.J.* at 52, 519 *A.*2d 336, ... or that defendant did not knowingly waive his right to object to the shackling[.]" Its direction to the PCR court was unmistakable: "if the first prong

of the *Strickland/Fritz* test is satisfied, on this record there can be no doubt that the shackling of Allen satisfied the second prong, which requires a showing that counsel's ineffective assistance prejudiced the defense." In those circumstances, the Appellate Division mandated, "the granting of defendant's PCR petition would then be required."

On remand, the PCR court conducted an evidentiary hearing, during which the certification of defendant's trial counsel was admitted in evidence. That certification contains but two relevant and largely redundant sentences: "It was not my strategy to have Maurice Allen testify on behalf of my client wearing handcuffs[,]" and "[t]he fact that Maurice Allen appeared before the jury wearing handcuffs was not due to any strategy decision of mine." The PCR court also received the live testimony of defendant's trial counsel. Echoing the denial of any strategic purpose as set forth in his certification, defendant's trial counsel testified that he was "caught off guard, [he] didn't anticipate [Allen] coming into the courtroom with restraints on at all[,]" and that the reason he started his questioning of Allen as he did was "as a tactic . . . to bring [Allen's criminal record] out to take out the sting of what [he] anticipated the prosecution would do later on[.]" He explained that the reason Allen was handcuffed "was going to be obvious to everybody the minute I asked him to draw—draw a thing and it was going to be obvious to everybody that he was in State prison the minute the State got a hold of him and cross[-examin]ed him."

In an unpublished decision dated April 21, 2010, the PCR court, albeit with grave reservations, granted defendant's PCR application, vacated his convictions and reinstated the case on the trial calendar. It recounted that "[d]efense counsel testified that there was no tactical strategy decision to allow [the] defense witness to appear shackled." It explained that, "[r]ather, [defense counsel] said he was 'surprised' by such an event and further, he never sought a curative instruction from the court—he simply never thought to do so." Despite that testimony, the PCR court—again,

the same judge who presided over defendant's trial—concluded that, "[a]s a matter of intellectual honesty, this court cannot and does not find that defense counsel was ineffective. On the contrary, his trial advocacy skills displayed in this case were exceptional." Rejecting defendant's ineffective assistance of counsel claim as failing to satisfy the first prong of the *Strickland/Fritz* test, the PCR court noted that "[t]here is, however, the defendant's due process claim, that he was denied his right to a fair trial, that must be addressed in light of the evidentiary hearing and the Appellate Division's rulings."

The PCR court questioned whether the Appellate Division had the authority to, "under the present circumstances, ... give the *Artwell* holding full retroactivity." Giving voice to its reservations, it "respectfully demur[red] and harbor[ed] serious doubts that the decision [to afford full retroactivity to *Artwell's* modified ban on the use of physical restraints for witnesses] would survive Supreme Court scrutiny." The PCR court observed that the two published decisions on which the Appellate Division relied—*King, supra,* and *Russell, supra*—were both instances in which the defendants' direct appeals had not been exhausted when *Artwell* was decided, thereby invoking only pipeline retroactivity. It contrasted those opinions with *Echols, supra,* where, as here, the defendant had exhausted his direct appeals before *Artwell* was decided—thereby requiring that *Artwell* be afforded full retroactivity in order to provide that defendant relief—noting that, in those circumstances, *Echols* denied full retroactivity to *Artwell's* ban. However, deeming itself bound, as law of the case, to the Appellate Division's conclusion that *Artwell's* ban on physical restraints was to be applied retroactively, the PCR court reluctantly granted defendant's application, vacated defendant's convictions, and placed the case on the trial calendar.

The State sought a stay of that order pending appeal, which was granted. It then sought leave to appeal before the Appellate Division, a motion that was denied with the notation that "[w]e remind the moving party that we review orders not opinions. The

record supports the relief ordered by the [court below]." The State then sought leave to appeal from this Court; that motion was granted limited to the issue of the retroactive application of *Artwell. State v. Dock*, 203 *N.J.* 432, 3 *A.*3d 1223 (2010).[4] The parties also were granted leave to file supplemental briefs on the limited issue on which leave to appeal had been granted.

## II.

Applying traditional retroactivity analysis and focusing on the collateral nature of defendant's PCR application, the State argues that *Artwell's* presumptive ban on physically restraining witnesses should not be given full retroactive effect. It asserts that *Artwell* confronted an issue of first impression—"whether a defendant's fair trial right is implicated when his or her witnesses are ordered to testify in restraints[,]" *Artwell, supra*, 177 *N.J.* at 535, 832 *A.*2d 295—and, in so doing, "created a new rule of law requiring a hearing and jury instruction if restraints are used on a defense witness." In support of that proposition, it emphasizes that *Artwell* had not been decided at the time of defendant's trial and that defendant had exhausted his direct appeals. The State then applies the three—factor test for retroactivity analysis set forth in *State v. Knight*, 145 *N.J.* 233, 251, 678 *A.*2d 642 (1996), enumerates the four alternatives available (purely prospective, prospective, pipeline retroactive, and fully retroactive) and concludes that "full retroactivity should be denied."

In contrast, defendant asserts that *Artwell's* ban on the shackling of defense witnesses is not a new rule of law and, hence, no retroactivity analysis is required. Defendant concedes that *Artwell* was not decided until 2003, four years after his conviction and sentence and two years after he exhausted his direct appeals.

---

4 Because the PCR court rejected defendant's ineffective assistance of counsel claim under the first prong of the *Strickland/Fritz* analysis and ruled exclusively on his due process claim, and, moreover, because defendant has not sought review of that determination, we consider the limited issue on appeal only in the context of defendant's due process argument.

Defendant nevertheless points to Standard 4.1(c) of the 1968 tentative draft of the American Bar Association's Standards for Criminal Justice, Standards Relating to Trial by Jury, for the proposition that "neither a defendant nor his witness should appear in restraints before a jury." He argues that "[p]rior to the *Artwell* decision and the defendant's trial there was an abundance of longstanding federal and other states' authority existing holding that it was a violation of a defendant's right to a fair trial for a defense witness to have to appear and testify in restraints." Defendant therefore claims that, as of the time of his 1999 trial, "a defendant in the State of New Jersey had a right to have his star witness testify unburdened by physical restraints in the absence of necessity and to have his credibility judged by the jury on the same basis as the State's witnesses." On that basis, defendant urges that the PCR court's order be affirmed.

## III.

### A.

■ At the outset, it is critical to differentiate between what *Artwell* holds and what it does not. In *Artwell, supra,* a defense witness was compelled to testify before the jury in both prison garb and in restraints. 177 *N.J.* at 530, 832 *A.*2d 295. In respect of the former, the Court concluded that, "going forward, a trial court may not require a defendant's witness to appear at trial in prison garb." *Id.* at 539, 832 *A.*2d 295 (citations omitted). Thus, the Court made clear that its ruling proscribing defense witnesses testifying in prison garb was prospective only.

■ *Artwell's* approach in respect of defense witnesses testifying in restraints was different. Instead of imposing an absolute bar on defense witnesses testifying in restraints, *Artwell* recognized, in a common sense manner, that there are instances where a witness, no matter his or her provenance, must be restrained. *Id.* at 537–38, 832 *A.*2d 295. It conceded that, although "the appearance of a defense witness in restraints presents a risk of

unfair prejudice to a defendant, the trial court may subject a witness to physical restraint only when it has reason to believe it is necessary to maintain the security of the courtroom." *Id.* at 537, 832 *A.*2d 295 (citations and internal quotation marks omitted). *Artwell* requires that "[i]n that instance, the trial court should hold a hearing, however informal, and state on the record out of the jury's presence its reasons for shackling the witness, whether they are based on evidence from trial, information obtained from criminal records, or statements made by law enforcement officers." *Ibid.* (citations, internal quotation marks and editing marks omitted). *Artwell* lists twelve non-exclusive factors the court should consider in making that determination, *id.* at 538, 832 *A.*2d 295, and further requires that "the court must instruct the jury in the clearest and most emphatic terms that it give such restraint no consideration whatever in assessing the proofs and determining guilt." *Ibid.* (citation and internal quotation marks omitted). Although the *Artwell* Court applied that rule to the case before it, it made no reference as to whether the rule it set forth is a new rule of law, or whether and to what extent that rule is to be given retroactive application.

This Court next addressed witnesses testifying in restraints in *State v. Kuchera, supra,* 198 *N.J.* 482, 969 *A.*2d 1052 (2009). *Kuchera* presented the question of "whether the principles espoused in *Artwell* apply to prosecution, as well as defense, witnesses." *Id.* at 486, 969 *A.*2d 1052. In respect of witnesses in restraints, the *Kuchera* Court "conclude[d], consistent with *Artwell,* that the paramount concern is the security of the courtroom, an issue as to which the proponent of the witness is irrelevant and a matter rightly entrusted to the sound discretion of the trial judge." *Ibid.* It noted that "[r]egardless of whether a witness is offered by the State or a defendant, the core question remains: is the witness a threat to courtroom security?" *Id.* at 496, 969 *A.*2d 1052. It explains that "[t]hat inquiry requires the type of 'however informal' hearing *Artwell* commands, and the answer resulting from that hearing—and not the vagary of which party is the

proponent of the witness—governs whether the witness is to testify under restraints." *Ibid.*

This appeal presupposes the correctness of *Artwell's* holding and asks, rather, whether its mandate is to be afforded retroactive application. It is to the contours of that analysis that we turn.

### B.

Stated in its plainest terms, the question presented in this appeal is "whether the rule of law [adopted in *Artwell* ] is to be applied retroactively and, if so, to what extent, a determination that implicates a three-step analysis." *State v. Cummings,* 184 *N.J.* 84, 96–97, 875 *A.*2d 906 (2005) (citing *Knight, supra,* 145 *N.J.* at 249–53, 678 *A.*2d 642); *see also State v. Molina,* 187 *N.J.* 531, 542–43, 902 *A.*2d 200 (2006) (same). The first step of that analysis requires that we "engage in the threshold inquiry of whether the rule at issue is a 'new rule of law' for purposes of retroactivity analysis." *Cummings, supra,* 184 *N.J.* at 97, 875 *A.*2d 906 (quoting *Knight, supra,* 145 *N.J.* at 249, 678 *A.*2d 642) (internal quotation marks omitted); *see also State v. Feal,* 194 *N.J.* 293, 307, 944 *A.*2d 599 (2008) (stating that "[t]he threshold retroactivity question is always the same—whether a new rule of law has been announced"); *State v. Colbert,* 190 *N.J.* 14, 22, 918 *A.*2d 14 (2007) (noting that where decision "is a well-settled principle ... it follows that it is not a new rule of law but one that has always applied" and that, in that instance, "a retroactivity analysis is unnecessary[ and] we have no warrant to consider limiting the retroactive effect of such a decision" (citations omitted)); *Molina, supra,* 187 *N.J.* at 543, 902 *A.*2d 200 (defining first step as "whether the rule at issue is a new rule of law for purposes of retroactivity analysis").

In defining whether a case announces a new rule of law, "[t]he test ... is whether ... it breaks new ground or imposes a new obligation on the State or if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Cummings, supra,* 184 *N.J.* at 97, 875 *A.*2d 906 (quoting

*Knight, supra,* 145 *N.J.* at 250–51, 678 *A.*2d 642) (internal quotation marks, editing marks and emphasis omitted); *State v. Lark,* 117 *N.J.* 331, 339, 567 *A.*2d 197 (1989) (quoting *Teague v. Lane,* 489 *U.S.* 288, 301, 109 *S.Ct.* 1060, 1070, 103 *L.Ed.*2d 334, 349 (1989)). The question of whether a decision represents a "new rule of law" also has been stated thusly: "a decision involving an accepted legal principle announces a new rule for retroactivity purposes so long as the decision's application of that general principle is sufficiently novel and unanticipated." *Cummings, supra,* 184 *N.J.* at 97, 875 *A.*2d 906 (quoting *Knight, supra,* 145 *N.J.* at 251, 678 *A.*2d 642) (internal quotation marks omitted).

■ If the first step of the retroactivity analysis is satisfied, that is, "[i]f that analysis yields the conclusion that a new rule of law in fact is announced, we proceed to the second step of the retroactivity analysis[.]" *Ibid.* That second step requires the balancing of three factors:

> If a decision indeed sets forth a "new rule," three factors generally are considered to determine whether the rule is to be applied retroactively: (1) the purpose of the rule and whether it would be furthered by a retroactive application, (2) the degree of reliance placed on the old rule by those who administered it, and (3) the effect a retroactive application would have on the administration of justice. Although those three factors have received detailed attention in our retroactivity case law, our cases also indicate that the retroactivity determination often turns more generally on the court's view of what is just and consonant with public policy in the particular situation presented.
>
> [*Ibid.* (quoting *Knight, supra,* 145 *N.J.* at 251, 678 *A.*2d 642) (internal quotation marks omitted).]

■ We have made clear that "[t]hose factors are not of equal weight, as the first factor, the purpose of the new rule, is often the pivotal consideration," and we have emphasized that "the second and third factors come to the forefront of the retroactivity analysis when the inquiry into the purpose of the new rule does not, by itself, reveal whether retroactive application of the new rule would be appropriate." *Ibid.* (citations, internal quotation marks and editing marks omitted). Further, in striking the required balance among those three factors, "[w]e distinguish between the second and third factors[.]" *Ibid.* In that limited

context, we have emphasized that "the second factor inquires whether law enforcement agents justifiably relied on the old rule in performing their professional responsibilities," and "the third factor in the retroactivity analysis, the effect a retroactive application would have on the administration of justice, recognizes that courts must not impose unjustified burdens on our criminal justice system." *Id.* at 97–98, 875 *A.*2d 906 (quoting *Knight, supra,* 145 *N.J.* at 252, 678 *A.*2d 642) (citations, internal quotation marks and editing marks omitted).

 Once the first two steps have been satisfied and "a determination is made that retroactivity is appropriate, we address the final step of the retroactivity analysis to determine which retroactivity option is to be chosen[.]" *Id.* at 98, 875 *A.*2d 906. In that final step,

> [t]his Court has four options in any case in which it must determine the retroactive effect of a new rule of criminal procedure. The Court may decide to apply the new rule purely prospectively, applying it only to cases in which the operative facts arise after the new rule has been announced. Alternatively, the Court may apply the new rule in future cases and in the case in which the rule is announced, but not in any other litigation that is pending or has reached final judgment at the time the new rule is set forth. A third option is to give the new rule "pipeline retroactivity," rendering it applicable in all future cases, the case in which the rule is announced, and any cases still on direct appeal. Finally the Court may give the new rule complete retroactive effect, applying it to all cases, including those in which final judgments have been entered and all other avenues of appeal have been exhausted.
>
> [*Ibid.* (quoting *Knight, supra,* 145 *N.J.* at 249, 678 *A.*2d 642).]

We turn, then, to the application of this three-step retroactivity analysis to this appeal.

## C.

 We address first whether *Artwell's* modified prohibition on the use of restraints on defense witnesses represents a new rule of law. Defendant asserts it does not, claiming that other jurisdictions—and the Appellate Division in *State v. Smith,* 346 *N.J.Super.* 233, 787 *A.*2d 276 (App.Div.2002)—had recognized *Artwell's* ruling, thus making it settled law as of defendant's 1999

trial. We do not agree. As *Smith, supra,* explicitly recognized, although "[t]he law on defendants being shackled in court is well-settled[,]" it also acknowledged that "shackling a defense witness is not the exact equivalent of shackling the defendant" and, speaking only eighteen months before *Artwell* was decided, the *Smith* court "found no case law in New Jersey dealing with a shackled witness." 346 *N.J.Super.* at 238–39, 787 *A.*2d 276. Furthermore, *Smith* points out that, even among the authorities in other jurisdictions that then prohibited or regulated restraints on defense witnesses, "there is some debate among the cases as to whether a due process consideration is involved when a witness is shackled[.]" *Id.* at 239, 787 *A.*2d 276. That paucity of authority was highlighted the following year in *Artwell, supra,* where we observed that "[t]his Court has never addressed whether a defendant's fair trial right is implicated when his or her witnesses are ordered to testify in restraints[,]" while pointedly noting that *Smith, supra,* is "the only reported case in this jurisdiction to address the restraint of a defendant's witness." 177 *N.J.* at 535–36, 832 *A.*2d 295.

Against that backdrop, *Artwell's* ban on a defense witness testifying in restraints absent a showing of a security risk clearly "breaks new ground[;] imposes a new obligation on the State[;] the result was not dictated by precedent existing at the time the defendant's conviction became final[;]" and is "sufficiently novel and unanticipated." *Cummings, supra,* 184 *N.J.* at 97, 875 *A.*2d 906 (internal quotation marks and emphasis omitted). In this narrow context, the conclusion that *Artwell's* ruling constitutes a new rule of law is simply unassailable.

That conclusion requires that we focus on the second step in the retroactivity analysis and engage in the balance of the three enumerated factors that comprise that step. *Artwell, supra,* acknowledges that "the appearance of a defense witness in restraints presents a risk of unfair prejudice to a defendant[.]" 177 *N.J.* at 537, 832 *A.*2d 295. That said, that risk is not controlling and the concerns it raises must give way when the trial court

" 'has reason to believe [the restraints] are necessary to maintain the security of the courtroom.' " *Ibid.* (quoting *Harrell v. Israel,* 672 *F.*2d 632, 635 (7th Cir.1982)). For that reason, in respect of the first factor—"the purpose of the rule and whether it would be furthered by a retroactive application," *Knight, supra,* 145 *N.J.* at 251, 678 *A.*2d 642—we must conclude that *Artwell's* fair-trial reasoning would not always be advanced by its retroactive application. Needless to say, until *Smith* and, eighteen months later, *Artwell,* both of which were decided after defendant had exhausted his direct appeals, those who administered our criminal trial system relied heavily on the ability to require restraints on witnesses without limitation. Finally, there is no doubt that giving *Artwell's* limited ban on restraints retroactive application will wreak havoc on the administration of justice, calling into question every trial in which a defense witness may have testified in restraints. For those reasons, we therefore conclude that the balance of the factors relevant to the second step of the retroactivity analysis must be struck against the retroactive application of *Artwell's* partial prohibition of defense witnesses testifying in restraints.

That conclusion takes us to the last step of the retroactivity analysis, that is, determining what effect *Artwell's* ruling in respect of restraints on defense witnesses will have. In descending order of the breadth of their effect, from the most narrow to the broadest, the shorthand hierarchy of categories is purely prospective, prospective, pipeline retroactivity, or full retroactivity. Clearly, because *Artwell* granted relief in that case, the *Artwell* Court envisioned that, at a minimum, its decision would be prospective or that it would "apply the new rule in future cases and in the case in which the rule is announced, but not in any other litigation that is pending or has reached final judgment at the time the new rule is set forth." *Knight, supra,* 145 *N.J.* at 249, 678 *A.*2d 642. We keep faith with that determination and likewise conclude that *Artwell's* limited prohibition on the use of restraints on defense witnesses—and, by extension, under *Kuch-*

*era, supra,* on any witnesses in a criminal trial—is to have prospective effect. We need not, on this record, consider whether *Artwell* would also be entitled to pipeline retroactivity in light of the fact that only full retroactivity, which we specifically decline to find here, would be required to provide the relief defendant seeks.

### D.

We apply that conclusion to defendant. He was convicted and sentenced in 1999, had his direct appeal heard and determined in 2000, and his petition for certification was denied in 2001, events that each preceded *Artwell* by several years. Because, by the time *Artwell* was decided, defendant's direct appeals had been exhausted, there was no controversy then extant. In those circumstances, *Artwell* could provide relief to defendant only if it were given full retroactive effect, a conclusion unmerited under our retroactivity analysis. Because we have rejected the claim that *Artwell* should be given full retroactive effect, we similarly reject defendant's claim that requiring Allen to testify in restraints denied defendant his fair trial right.

### IV.

The judgment of the Law Division in conformity with the Appellate Division's directions granting defendant's PCR application, vacating his convictions and returning the case to the trial calendar is reversed; defendant's convictions and sentence are reinstated; and the stay entered pending appeal is vacated as moot.

*For reversal and reinstatement*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, RIVERA–SOTO, HOENS and Judge STERN (temporarily assigned)—7.

*Opposed*—None.