NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1767-22

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

KHALIL H. HASKINS,
a/k/a KHALIL HASKIN,
and ANDREW HAEFELE,

      Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

February 7, 2024

APPELLATE DIVISION

Submitted January 23, 2024 – Decided February 7, 2024

Before Judges Haas, Natali and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 21-08-2068.

Joseph E. Krakora, Public Defender, attorney for appellant (Daniel S. Rockoff, Assistant Deputy Public Defender, of counsel and on the brief).

Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Jason Magid, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

NATALI, J.A.D.

Believing the tinted front side windows of defendant Khalil H. Haskins' car violated the Motor Vehicle Code, police stopped his vehicle and, after a warrantless search, seized marijuana, a loaded handgun, and drug paraphernalia from the car and suspected heroin from defendant. Following an unsuccessful motion to suppress that physical evidence, defendant pled guilty to fourth-degree possession of a defaced firearm, N.J.S.A. 2C:39-3(d), and second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1). He now appeals the court's order denying his suppression application, arguing the stop of his car was unlawful because the State failed to establish his car's tinted windows violated the Motor Vehicle Code under the test set forth in State v. Smith, 251 N.J. 244 (2022).

In Smith, our Supreme Court held "reasonable and articulable suspicion of a tinted windows violation arises only when a vehicle's front windshield or front side windows are so darkly tinted that police cannot clearly see people or articles within the car." Id. at 253. When the court denied defendant's application, our Supreme Court had not yet decided Smith, and it instead relied on our decision in State v. Cohen, 347 N.J. Super. 375 (App. Div. 2002). In that case, we concluded police must establish the windows are "so darkly tinted as to obstruct [the driver's] vision" to justify a motor vehicle stop based upon a violation of N.J.S.A. 39:3-74. Id. at 380. In support, we held that

statute "prohibits the use of tinted windows which fail to meet the applicable standard now set forth in N.J.A.C. 13:20-33.7," a regulation proscribing "tinted spray or plastic material added to previously approved glazing in the front windshield or windows" because of the change to "vision and light transmission properties of the glazing in areas where driver visibility shall not be obscured." Ibid. (quoting N.J.A.C. 13:20-33.7(d)). Because we conclude the holding in Smith constituted a new rule of law for retroactivity purposes, and is further entitled to pipeline retroactivity, we vacate the court's order and remand for further proceedings consistent with this opinion.

I.

The relevant facts that emerged at the suppression hearing are as follows. On January 19, 2021, Barrington Police Department Corporal Patrick D'Ascenzo observed defendant driving a black Cadillac de Ville with "heavily tinted" front and back windows on both the driver and passenger sides. He stated the rear windshield was not tinted and could not recall whether the front windshield was tinted. Because he understood the Motor Vehicle Code to prohibit tinted front windows, Corporal D'Ascenzo stopped defendant's car, conducted a warrantless search, and seized as noted.

Defendant moved to suppress the physical evidence, which the court denied. The court found Corporal D'Ascenzo testified credibly and relying on

Cohen, 347 N.J. Super. at 380, found he had reasonable suspicion to stop defendant's car based on the front window tint which Corporal D'Ascenzo believed violated N.J.S.A. 39:3-75.[1] As noted, our Supreme Court decided Smith on June 28, 2022, approximately four months after the court denied defendant's motion to suppress.

Defendant entered his plea on March 3, 2022, was later sentenced, and the court entered a Judgment of Conviction on April 1, 2022. At sentencing, and pursuant to Rule 3:21-4(i), the court advised defendant of his right to appeal and the associated forty-five-day deadline set forth in Rule 2:4-1(a). Defendant's notice of appeal was therefore due on May 16, 2022, but was not filed until February 17, 2023.

Contemporaneous with his February 17 notice, defendant filed an unopposed motion for leave to file a notice of appeal as within time and submitted his certification, in which he stated his family "called [his attorney on his behalf] and left multiple messages requesting an appeal" but received no response. He also stated he "wrote to the criminal case manager around April 20[], 2022 requesting assistance" and "to the judge," who responded informing

---

[1] Notwithstanding the court's reliance on N.J.S.A. 39:3-75, the parties agree the controlling statute is N.J.S.A. 39:3-74. See Smith, 251 N.J. at 261 (noting "[t]he plain language of section 75 indicates that it is concerned solely with the quality and maintenance of . . . safety glazing material, not aftermarket tinted window film").

him his letter had been "forwarded to [his] attorney." Finally, defendant noted he wrote to the appellate section of the Office of the Public Defender, who "informed [him] that [his] appeal request was out of time," leading to the filing of his motion, which we granted. See State v. Molina, 187 N.J. 531, 535-36 (2006) (holding defendant may move to appeal as within time despite failing to prosecute appeal in timely manner and having been advised of appeal rights if defendant "demonstrates, by [their] own certification and by a preponderance of the credible evidence, that the defendant did request the filing of an appeal in a timely manner and that counsel failed to prosecute it").

Before us, defendant argues the court erred in denying his suppression motion because the police lacked a reasonable suspicion that the car's tinted windows violated N.J.S.A. 39:3-74. In support, he contends the State failed to present evidence the tinted windows inhibited Corporal D'Ascenzo's ability to clearly see inside the vehicle as required under Smith, 251 N.J. at 266. In response, the State contends Smith should apply prospectively only, and the court's reliance on Cohen, 347 N.J. Super. at 380, was therefore proper. In the alternative, the State requests we remand to permit it to present additional facts and testimony consistent with Smith.

Whether a court decision applies prospectively or retroactively involves a three-step analysis. State v. Dock, 205 N.J. 237, 254 (2011). First, we must initially consider whether the decision announces a new rule of law. Ibid. Our Supreme Court has instructed that a new rule is announced if the decision "breaks new ground," ibid. (quoting State v. Cummings, 184 N.J. 84, 97 (2005)), or involves a "sudden and generally unanticipated repudiation of a long-standing practice," State v. G.E.P., 243 N.J. 362, 382 (2020) (quoting State v. Feal, 194 N.J. 293, 308 (2008)).

A decision is also considered a new rule if it "imposes a new obligation on the State." Dock, 205 N.J. at 254 (quoting Cummings, 184 N.J. at 97). Finally, a decision announces a new rule "if the result was not dictated by precedent existing at the time the defendant's conviction became final." Ibid. (quoting Cummings, 184 N.J. at 97). In cases in which "the meaning of a statute as determined by prior decision is changed, the court decision changing it is the equivalent of a new rule of law." State v. Burstein, 85 N.J. 394, 406 (1981).

After determining a decision reflects a new rule of law, we then balance three factors to determine if retroactive application is warranted: "(1) the purpose of the rule and whether it would be furthered by a retroactive

application, (2) the degree of reliance placed on the old rule by those who administered it, and (3) the effect a retroactive application would have on the administration of justice." G.E.P., 243 N.J. at 386 (quoting State v. Henderson, 208 N.J. 208, 300 (2011)). We also consider "more generally . . . what is just and consonant with public policy in the particular situation presented." Dock, 205 N.J. at 255 (quoting Cummings, 184 N.J. at 97).

With regard to the first factor, a rule intended to remedy a past substantial impairment of the truth-finding function or to "enhance the reliability of the factfinding process" will generally weigh in favor of some form of retroactivity. G.E.P., 243 N.J. at 386-87. On the other hand, a rule intended "solely to deter illegal police conduct" weighs against retroactivity, because "the deterrent purposes of such a rule would not be advanced by applying it to past misconduct." Burstein, 85 N.J. at 406. Our Supreme Court has emphasized the factors are "not of equal weight" and the first factor is "often the pivotal consideration," with the others becoming more salient "when the inquiry into the purpose of the new rule does not, by itself, reveal whether retroactive application . . . would be appropriate." Dock, 205 N.J. at 255 (quoting Cummings, 184 N.J. at 97).

The second factor requires an examination of "whether law enforcement agents justifiably relied on the old rule in performing their professional

7

responsibilities." Id. at 256. Such reliance must have been "in good faith" and consistent with "then-prevailing constitutional norms." G.E.P., 243 N.J. at 388. "'The reasoning underlying this inquiry is that state agents should not be penalized for complying in good faith with "prevailing constitutional norms"' when carrying out their duties." State v. Knight, 145 N.J. 233, 252 (1996) (quoting State v. Howery, 80 N.J. 563, 582 (1979) (Pashman, J., dissenting)).

In weighing the third factor, we consider whether the retroactive application of a rule would "undermine the validity of large numbers of convictions." Ibid. "We have noted our concern about overwhelming courts with retrials, and our awareness of the difficulty in re-prosecuting cases in which the offense took place years in the past." Ibid. In other words, we are more hesitant to apply a rule retroactively when there will be a significant adverse impact upon our criminal justice system.

Finally, after determining retroactivity is appropriate, we are required to decide which "retroactivity option is to be chosen." Dock, 205 N.J. at 256 (quoting Cummings, 184 N.J. at 98). The new rule may be applied: (1) as the State requests here, "purely prospectively"; (2) "in future cases and in the case in which the rule is announced, but not in any other litigation that is pending or has reached final judgment at the time the new rule is set forth"; (3) "in all future cases, the case in which the rule is announced, and any cases still on

8                                                                  A-1767-22

direct appeal," known as "pipeline retroactivity"; or (4) completely retroactively. Ibid. (quoting Cummings, 184 N.J. at 98).

Complete retroactivity is appropriate only where the old rule "'substantially impair[ed] [the] truth-finding function' and raises 'serious question about the accuracy of guilty verdicts in past trials.'" G.E.P., 243 N.J. at 386 (emphasis and alterations in original) (quoting Feal, 194 N.J. at 308-09). Generally, we seek to avoid retroactive application "if many cases will be impacted." Feal, 194 N.J. at 311; see also State v. Purnell, 161 N.J. 44, 56 (1999) (holding courts should consider "the number of cases that would require dismissal or retrial in the event of retroactive application" and strive to "avoid overwhelming courts with retrials and the difficulty of retrying cases in which the underlying events took place long in the past"). Examples of rules to which complete retroactivity has been applied include the right to counsel at trial, G.E.P., 243 N.J. at 387 (quoting Burstein, 85 N.J. at 407) (citing Pickelsimer v. Wainwright, 375 U.S. 2 (1963)); the right to counsel at preliminary hearings, ibid. (quoting Burstein, 85 N.J. at 407) (citing Arsenault v. Massachusetts, 393 U.S. 5 (1968)); the requirement the State prove all elements of an offense beyond a reasonable doubt in juvenile proceedings, ibid. (quoting Burstein, 85 N.J. at 407) (citing Ivan V. v. City of New York, 407 U.S. 203 (1972)); and the exclusion of codefendants' confessions which

implicate the defendant, ibid. (quoting Burstein, 85 N.J. at 407) (citing Roberts v. Russell, 392 U.S. 293 (1968)).

Pipeline retroactivity is proper where a new rule is "designed to enhance the reliability of the factfinding process" but the old rule did not substantially impair the accuracy of the process, id. at 388 (citing Burstein, 85 N.J. at 408), or where there is an "absence of data concerning 'the number and kinds of cases that would be affected by a rule of complete retroactivity. . . ,'" Feal, 194 N.J. at 311-12 (quoting State v. Bellamy, 178 N.J. 127, 142-43 (2003)). This outcome "best balances principles of fairness and repose." State v. Natale, 184 N.J. 458, 494 (2005). Examples of new rules of law to which our Supreme Court applied pipeline retroactivity include the application of a totality of circumstances test to warrantless blood draws in DWI cases, State v. Adkins, 221 N.J. 300, 313 (2015); the heightened burden of proof in DWI cases involving refusal to submit to a breathalyzer test, Cummings, 184 N.J. at 99; and the exclusion of a prosecutor's comments about defendant's presence at trial, Feal, 194 N.J. at 312.

On the other hand, rules intended "solely to deter illegal police conduct," such as exclusionary rules, are "virtually never given retroactive effect." Burstein, 85 N.J. at 406. Instances of rules applied only prospectively include those permitting admission of wiretap tapes which had not been timely sealed

10

only if there had been no tampering, id. at 411; excluding results of wiretaps due to improper minimization, State v. Catania, 85 N.J. 418, 447 (1981); and invalidating "random traffic stops," State v. Carpentieri, 82 N.J. 546, 548-49 (1980).

Here, we agree with the State that Smith announced a new rule of law as it imposed a new obligation on the State—namely, the requirement to establish "that tinting on the front windshield or front side windows inhibited officers' ability to clearly see the vehicle's occupants or articles inside" when relying upon a tinted windows violation as a basis for reasonable suspicion. Smith, 251 N.J. at 266.

Additionally, we are satisfied the decision reached a result not dictated by existing precedent. Under Cohen, the State was required only to show, more generally, the officer reasonably believed a car's windows were "so darkly tinted as to obstruct [the driver's] vision." 347 N.J. Super. at 380. We also held in that case "N.J.S.A. 39:3-74 prohibits the use of tinted windows which fail to meet the applicable standard now set forth in N.J.A.C. 13:20-33.7." Ibid. In contrast, under Smith, the Court determined the State must "present evidence" that the window tint actually "inhibited officers' ability to clearly see" inside the vehicle. 251 N.J. at 266. The Court also explicitly "depart[ed] from Cohen to the extent that it ties violations of N.J.S.A. 39:3-74

11

to the standards set forth in N.J.A.C. 13:20-33.7," finding the regulation no longer applicable to passenger vehicles. <u>Id.</u> at 262. As such, we are satisfied <u>Smith</u> changed "the meaning of a statute as determined by prior decision." <u>Burstein</u>, 85 N.J. at 406.

We are unpersuaded by the State's argument, however, that <u>Smith</u> should apply purely prospectively and conclude the rule set forth in <u>Smith</u> is entitled to pipeline retroactivity. With regard to the first balancing factor, the rule's purpose, the Court noted its task in <u>Smith</u> was "to interpret the language of a statute [N.J.S.A. 39:3-74] enacted a century ago," specifically the term "non-transparent." 251 N.J. at 266. In other words, the court's holding clarified the circumstances under which window tint violates N.J.S.A. 39:3-74, which we are satisfied will "enhance the reliability of the factfinding process," <u>G.E.P.</u>, 243 N.J. at 388.

Turning to the second and third factors, the degree of reliance on the old rule and the impact on the administration of justice, against this record we accord each limited weight. We reach this conclusion because the record lacks sufficient support to evaluate the extent of law enforcement's reliance on <u>Cohen</u>, or whether that reliance was "in good faith" and consistent with "then-prevailing constitutional norms." <u>G.E.P.</u>, 243 N.J. at 388. Similarly, the

12

record is again devoid of evidence establishing the number or types of cases impacted by retroactive application of the rule.

Nevertheless, we acknowledge Cohen remained good law for over twenty years and, as the State posits, police have likely relied on its holding. Additionally, we presume retroactive application of Smith will have at least some effect upon the administration of justice and we are mindful that we "must not impose unjustified burdens on our criminal justice system," Cummings, 184 N.J. at 98 (quoting Knight, 145 N.J. 252). We are satisfied the first factor, strongly supporting retroactivity, outweighs the second and third factors, to the extent they weigh against retroactivity. As noted, the factors are "not of equal weight" and the first is "often the pivotal consideration." Dock, 205 N.J. at 255 (quoting Cummings, 184 N.J. at 97).

As such, we finally examine which retroactivity option is the most appropriate. We find limited retroactivity is a result which is "just and consonant with public policy," ibid. (quoting Cummings, 184 N.J. at 97), and are satisfied complete retroactivity is unwarranted as we cannot conclude the prior rule in Cohen "substantially impair[ed] [the] truth-finding function" to the extent that it raised "serious question about the accuracy of guilty verdicts in past trials." G.E.P., 243 N.J. at 386 (alterations in original) (quoting Feal, 194 N.J. at 308-09). An additional consideration militating against purely

prospective application is the holding in <u>Smith</u> is not intended in our view to have a deterrent effect, but rather to identify the level of window tint which violates N.J.S.A. 39:3-74.   Under these circumstances, we find pipeline retroactivity is appropriate.

III.

We also conclude defendant's appeal, although not filed until after <u>Smith</u> was decided, should be deemed within the "pipeline."   As noted, we granted defendant leave to file his notice of appeal "as within time."   Therefore, his appeal was deemed filed within forty-five days from the sentence date, which was at least one month prior to the <u>Smith</u> decision.   Defendant's case, for all practical purposes, was accordingly "on direct appeal" at the time <u>Smith</u> was issued.   <u>Dock</u>, 205 N.J. at 256 (quoting <u>Cummings</u>, 184 N.J. at 98).

Having determined <u>Smith</u> applies to this case and others in the pipeline, we vacate the court's denial of defendant's motion to suppress and remand this matter for the court to consider whether the State has established "tinting on the front side windows inhibited officers' ability to clearly see the vehicle's occupants or articles inside," as required under <u>Smith</u>, 251 N.J. at 266.   <u>See</u> <u>Adkins</u>, 221 N.J. at 317 (requiring opportunity on remand for the State to present evidence supporting basis for police action in applying pipeline retroactivity to new rule).   In doing so, we reject defendant's argument we

14

should resolve the matter based on the existing record. The parties should be permitted to present evidence and argument with regard to the new requirements announced in Smith.

Finally, as the judge made credibility findings and may be committed to her previous view of the evidence, we direct that a new judge preside over the suppression hearing on remand. State v. Jones, 475 N.J. Super. 520, 534 (App. Div. 2023) (requiring suppression hearing be assigned to new judge as motion judge weighed evidence and made credibility findings); see also R.L. v. Voytac, 199 N.J. 285, 306 (2009) (holding matter should be assigned to a different judge on remand because the court "previously made credibility findings"). We offer no opinion on the merits of defendant's suppression motion or whether defendant should ultimately prevail on the issues, and nothing in this opinion should be construed as an expression of such.

To the extent we have not specifically addressed any of the parties' legal arguments it is because we have concluded they are of insufficient merit to warrant discussion in a written opinion. R. 2:11–3(e)(2).

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1767-22