**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5770-14T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ADRIAN ZIMMERMAN,

    Defendant-Appellant.

_____

Submitted April 27, 2017 — Decided  May 23, 2017

Before Judges Hoffman, O'Connor and Mawla.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Indictment No. 13-
03-0605.

Joseph E. Krakora, Public Defender, attorney
for appellant (Michele A. Adubato, Designated
Counsel, on the brief).

Carolyn A. Murray, Acting Essex County
Prosecutor, attorney for respondent (Frank J.
Ducoat, Special Deputy Attorney General/
Acting Assistant Prosecutor, of counsel and
on the brief).

PER CURIAM

    On February 14, 2012, an Essex County grand jury returned

Indictment No. 2012-2-439, charging defendant Adrian Zimmerman

with conspiracy to commit second-degree aggravated assault, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:12-1(b)(1) (count one); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count two); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (count three); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count four); and third-degree criminal restraint, N.J.S.A. 2C:13-2 (count five).

The indictment stems from a violent attack in Newark on October 9, 2011, where the victim, J.B., told police he was assaulted by two males, one named "Adrian," and several other females. Three days after the assault, J.B. met with police and viewed various photographs. Based on his review of these photographs, J.B. identified defendant as one of the male assailants, and the co-defendant named in the indictment, J.N., as the other male assailant.

At a pre-trial Wade[1] hearing, the prosecutor told the judge J.B. identified Herbert Elijah as the other male perpetrator and not J.N., resulting in the State's dismissal of the indictment against J.N.[2] On March 12, 2013, the grand jury returned superseding Indictment No. 2013-3-605, which essentially renewed

---

[1] United States v. Wade, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967).

[2] The record does not reflect the Wade hearing was completed.

A-5770-14T1

counts one through four against defendant. The superseding indictment also charged co-defendants Herbert Elijah, Yasmiyn French, and Jamia French on counts one through four, and charged co-defendant Elijah with third-degree criminal restraint on count five.

Following a trial before a different judge, a jury found defendant guilty on counts one through four. At sentencing, the judge merged counts one and four into count two and sentenced defendant to five years of imprisonment, subject to the eighty-five percent period of parole ineligibility imposed by the No Early Release Act, N.J.S.A. 2C:43-7.2. The judge further sentenced defendant to a concurrent one-year term on count three.

On appeal, defendant seeks reversal, asserting (1) he received ineffective assistance of counsel based on trial counsel's failure to suppress an out-of-court identification; (2) the trial court erred by failing to charge the jury, sua sponte, on third-degree aggravated assault; (3) the trial court erred by failing to voir dire the entire jury after an alleged incident involving three jury members; and (4) the State failed to produce sufficient evidence to support a verdict of second-degree aggravated assault beyond a reasonable doubt.

We have reviewed the arguments presented in light of the record and applicable law. For the reasons that follow, we affirm.

A-5770-14T1

We first summarize the relevant testimony from the trial record. On October 9, 2011, Detective Chris Segarra responded to a report of an assault in progress. Upon arriving at the scene, Detective Segarra and his partner found J.B. handcuffed to a gate. J.B. appeared injured, slumping towards the ground with blood on his face.

J.B. told police that two males — one named "Adrian" — and several females approached him and accused him of breaking into a daycare facility. J.B. further stated the individuals proceeded to beat him with "metal sticks and bats," while claiming they saw him break into the daycare through its surveillance cameras. According to Detective Segarra, J.B. described "Adrian" as thirty-four years old, five-foot nine, two hundred twenty pounds, and black.

Officer Demaris Febus testified that on October 9, he responded to a reported burglary at a daycare center. Jamia French, the daughter of owner Robyn Elijah, reported the crime. Officer Febus viewed the daycare's surveillance footage and observed a man carrying a bag; Jamia identified the man in the video as "the guy from upstairs. The boyfriend of the girl that lives . . . upstairs."

J.B. testified that in October 2011, he lived with his ex-girlfriend above a daycare center in Newark. J.B. said "Adrian"

worked at the daycare center, and he saw Adrian every day. He knew Adrian by name because he "heard everybody else calling his name." J.B. identified defendant as "Adrian" in the courtroom.

According to J.B., on October 9, 2011, while walking home from the store, he observed defendant, defendant's stepfather, and defendant's sisters walking towards him holding aluminum bats and sticks. J.B. said the stepfather first struck him in the face with a bat and then handcuffed him to a gate. Defendant and the stepfather hit him with bats, and the sisters hit him with sticks. J.B. said his assailants accused him of breaking into the daycare center, which he denied.

The State introduced into evidence photographs of J.B.'s injured arm, hand, buttocks, thigh, and leg, which all showed bruising or swelling as a result of the assault. J.B. further testified his assailants injured his knee, causing him to walk with a limp and experience daily pain, three years after the event. He also said the attackers broke his nose, which permanently altered its shape and caused it to appear swollen.

After the trial court sentenced defendant, he filed this appeal.[3] He presents the following arguments for consideration:

---

[3] After filing his notice of appeal, defendant moved for a temporary remand to reconstruct the record and to complete the Wade proceedings; however, he later withdrew the motion.

POINT I

THE FAILURE OF TRIAL COUNSEL TO CHALLENGE THE
ADMISSIBILITY OF THE OUT OF COURT
IDENTIFICATION OF MR. BRUCE CONSTITUTED
INEFFECTIVE ASSISTANCE OF COUNSEL. (Not
raised below).

POINT II

THE FAILURE OF THE COURT TO GIVE APPROPRIATE
INSTRUCTIONS TO THE JURY ON AGGRAVATED ASSAULT
WAS ERROR MANDATING REVERSAL.

POINT III

THE TRIAL COURT'S FAILURE TO VOIR DIRE THE
ENTIRE JURY PANEL FOLLOWING THE INCIDENT WITH
THREE JURORS WAS ERROR AND DENIED DEFENDANT
OF [sic] A FAIR TRIAL.

POINT IV

THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE
CONVICTION FOR SECOND[-]DEGREE AGGRAVATED
ASSAULT BEYOND A REASONABLE DOUBT. (Not
raised below).

We reject these contentions and affirm.

I.

Defendant first contends the failure of his trial counsel to challenge the admissibility of J.B.'s out-of-court identification constituted ineffective assistance. We disagree.

In order to prevail on a claim of ineffective assistance of counsel, a defendant must meet a two-pronged test. First, the defendant must show counsel was deficient, meaning "counsel made errors so serious that counsel was not functioning as the 'counsel'

6                                                        A-5770-14T1

guaranteed the defendant by the Sixth Amendment." <u>Strickland v. Washington</u>, 466 <u>U.S.</u> 668, 687, l04 <u>S. Ct.</u> 2052, 2064, 80 <u>L. Ed.</u> 2d 674, 693 (1984). This inquiry turns on "whether counsel's performance was 'reasonable considering all the circumstances.'" <u>State v. Savage</u>, 120 <u>N.J.</u> 594, 617 (1990) (quoting <u>Strickland</u>, <u>supra</u>, 466 <u>U.S.</u> at 688, 104 <u>S. Ct.</u> at 2064, 80 <u>L. Ed.</u> 2d at 694).

"Second, the defendant must show that the deficient performance prejudiced the defense." <u>Strickland</u>, <u>supra</u>, 466 <u>U.S.</u> at 687, 104 <u>S. Ct.</u> at 2064, 80 <u>L. Ed.</u> 2d at 693. To prove prejudice, the defendant must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694, 104 <u>S. Ct.</u> at 2068, 80 <u>L. Ed.</u> 2d at 698. "Unless both parts of the test are established, defendant's claim must fail." <u>State v. Echols</u>, 199 <u>N.J.</u> 344, 358 (2009).

Claims attacking counsel's assistance "are particularly suited for post-conviction review because they often cannot reasonably be raised in a prior proceeding." <u>State v. Preciose</u>, 129 <u>N.J.</u> 451, 460 (1992). "Our courts have expressed a general policy against entertaining ineffective-assistance-of-counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record." <u>Ibid.</u> "However, when the trial itself provides an adequately developed record upon

which to evaluate defendant's claims, appellate courts may consider the issue on direct appeal." State v. Castagna, 187 N.J. 293, 313 (2006) (citing State v. Allah, 170 N.J. 269, 285 (2002)).

As such, we will consider defendant's argument, which we find lacks merit. The State never introduced the disputed identification at trial. Thus, even assuming the identification was impermissibly suggestive or unreliable, see State v. Herrera, 187 N.J. 493, 501 (2006), defendant cannot show it caused prejudice to his defense because it never came before the jury. Strickland, supra, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693. Therefore, we will not disturb defendant's conviction on this basis.

## II.

Defendant next contends for the first time on appeal that the trial judge's failure to instruct the jury sua sponte on third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7), was reversible error. We disagree.

At trial, the court instructed the jury on second-degree aggravated assault causing serious bodily injury, N.J.S.A. 2C:12-1(b)(1), count two of defendant's indictment. The judge also instructed the jury on third-degree aggravated assault by causing bodily injury with a deadly weapon, N.J.S.A. 2C:12-1(b)(2). The defendants requested the judge charge fourth-degree aggravated

assault by recklessly causing bodily injury with a deadly weapon, N.J.S.A. 2C:12-1(b)(3), which the judge rejected.[4] Defendant did not request any other charges or otherwise object to the judge's instructions.[5]

When a defendant does not object to a jury instruction at trial, we review the charge for plain error. R. 1:7-2; R. 2:10-2; State v. McKinney, 223 N.J. 475, 494 (2015). Plain error is a "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Adams, 194 N.J. 186, 207 (2008) (alteration in original) (quoting State v. Jordan, 147 N.J. 409, 422 (1997)).

---

[4]  Defendant's brief is unclear whether he is also challenging the judge's denial of this charge. Nonetheless, the facts in the record clearly show a recklessness charge would have been inappropriate because of the intentional nature of the assault. See N.J.S.A. 2C:1-8(e) ("The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense."); State v. Mance, 300 N.J. Super. 37, 63 (App. Div. 1997) (finding no rational basis to charge N.J.S.A. 2C:12-1(b)(3) where the evidence of purpose was overwhelming).

[5]  The record shows the parties had a brief discussion regarding the "significant bodily injury" language of N.J.S.A. 2C:12-1(b)(7) with regard to the verdict sheet. However, defense counsel did not formally request the judge charge the jury on this offense.

"If neither party requests a charge on a lesser-included offense, the court must sua sponte provide an instruction 'when the facts adduced at trial clearly indicate that a jury could convict on the lesser while acquitting on the greater offense.'" State v. Maloney, 216 N.J. 91, 107 (2013) (quoting State v. Thomas, 187 N.J. 119, 132 (2006)). "Only if the record clearly indicates a lesser-included charge — that is, if the evidence is jumping off the page — must the court give the required instruction." State v. Denofa, 187 N.J. 24, 42 (2006).

Defendant's requested charge on appeal — aggravated assault causing significant bodily injury, N.J.S.A. 2C:12-1(b)(7) — is a lesser-included offense of aggravated assault causing serious bodily injury, N.J.S.A. 2C:12-1(b)(1). Our criminal code defines significant bodily injury as "bodily injury which creates a temporary loss of the function of any bodily member or organ or temporary loss of any one of the five senses." N.J.S.A. 2C:11-1(d). The code defines serious bodily injury as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." N.J.S.A. 2C:11-1(b). Defendant contends J.B.'s injuries were not "serious," and therefore, the judge should have instructed the jury to consider whether his injuries were "significant."

10

We reject this argument. The record shows J.B. suffered a knee injury from the assault, causing him to walk with a limp and suffer daily pain three years after the event. J.B. also suffered a broken nose, which he stated altered the shape of his nose. We recognize "a medical diagnosis of a broken nose does not necessarily qualify the harm . . . as 'serious bodily injury.'" State v. Kane, 335 N.J. Super. 391, 399 (App. Div. 2000). Here, however, J.B.'s nose was permanently disfigured. Defendant did not dispute the extent of J.B.'s injuries at trial. Therefore, the judge appropriately charged the jury on aggravated assault causing serious bodily injury due to the "protracted" nature of J.B.'s injuries. N.J.S.A. 2C:11-1(b). The record did not "clearly indicate[]" that a charge for significant bodily injury was appropriate. Denofa, supra, 187 N.J. at 42. Accordingly, we find no basis to reverse the trial judge on this issue.

## III.

Defendant further asserts the trial judge's failure to voir dire the entire jury panel, following an out-of-court incident involving three jurors, denied him a fair trial. We disagree.

While the jurors were outside of the courtroom during jury deliberation, a man reportedly told Juror 16, "Be careful. You're . . . gonna be indicting an innocent person." Juror 16 reported this incident to the court officer, and two more jurors came

11

forward to join in this report. According to the trial judge, the jurors initially said the statement was intimidating or "[s]omething to that effect."

Counsel for one of the co-defendants then stated to the judge, "[I]f the other jurors actually said that they heard it . . . then we need to voir dire them all." The judge agreed to "bring them all up," but then requested "anyone that heard . . . I just want [that] group of people."

The trial judge proceeded to voir dire Juror 16, who said a man with dreadlocks approached him and two other jurors while they were standing by the elevators and stated, "[T]hink real hard . . . about your decisions. . . . Some people's lives is going to be affected by it." Juror 16 denied feeling intimidated by these remarks and said he did not discuss the incident with other members of the jury.

The judge then interviewed the other two jurors. Juror 3 stated the man "expressed his opinion" regarding "the gravity of a situation" and essentially admonished the juror to "[t]ake one's time." Juror 3 did not feel this statement was a threat, and she said it would not affect her ability to be fair and impartial. Juror 2 said the man told her to "make sure [she] exhibited some patience" because she "had lives in [her] hands." She "wasn't quite sure how to take that," but she stated she did not feel

12

intimidated and would be able to remain fair and impartial. Both jurors said they did not discuss the incident with any of the other jurors.

The parties agreed the man was associated with an unrelated case and would not be back in the courtroom for the remainder of the proceedings. Following voir dire, defendant did not object or request the court take further action.

We apply an abuse of discretion standard to the trial court's determinations regarding claims of juror taint. State v. R.D., 169 N.J. 551, 559-60 (2001). The Sixth Amendment to the United States Constitution and Article I, paragraph 10 of the New Jersey Constitution guarantee criminal defendants the right to an impartial jury during trial. Id. at 557. Criminal defendants are "entitled to a jury that is free of outside influences and [that] will decide the case according to the evidence and arguments presented in court in the course of the criminal trial itself." State v. Williams, 93 N.J. 39, 60 (1983). "The securing and preservation of an impartial jury goes to the very essence of a fair trial." Ibid.

"[I]f during the course of the trial it becomes apparent that a juror may have been exposed to extraneous information, the trial court must act swiftly to overcome any potential bias and to expose factors impinging on the juror's impartiality." R.D., supra, 169

N.J. at 557-58 (citing State v. Bey, 112 N.J. 45, 83-84 (1988)). Accordingly, "the court must act swiftly to investigate and to determine whether the jurors are capable of fulfilling their duty in an impartial and unbiased manner." State v. McGuire, 419 N.J. Super. 88, 153 (App. Div.), certif. denied, 208 N.J. 335 (2011).

Our Supreme Court recognizes that "the trial court is in the best position to determine whether the jury has been tainted." R.D., supra, 169 N.J. at 559. The trial judge must "consider the gravity of the extraneous information in relation to the case, the demeanor and credibility of the juror or jurors who were exposed to the extraneous information, and the overall impact of the matter on the fairness of the proceedings." Ibid. The trial judge has the discretion to grant a new trial based on juror taint. Id. at 558.

In the instant matter, we find no basis to second-guess the trial judge's handling of the jury issue. After learning of the reported incident, the judge swiftly conducted voir dire of the relevant jurors. The three jurors stated under oath that they did not discuss the incident with the other jurors, they did not feel intimidated, and they were able to decide the matter in a fair and impartial manner. The record contains no evidence that any other jurors were present for these comments, and, therefore, interviewing the entire panel was unnecessary. Accordingly, we

14

find no abuse of the trial judge's discretion in refraining from questioning the remaining jurors.

IV.

Lastly, defendant asserts, for the first time on appeal, the jury verdict finding him guilty of second-degree aggravated assault causing serious bodily injury, N.J.S.A. 2C:12-1(b)(1), was against the weight of the evidence. We disagree.

Defendant failed to file a motion for a new trial on this issue. Generally, "the issue of whether a jury verdict was against the weight of the evidence shall not be cognizable on appeal unless a motion for a new trial on that ground was made in the trial court." R. 2:10-1. However, although we need not entertain defendant's argument in the absence of a new trial motion, we may nevertheless choose to do so in the interest of justice. See State v. Smith, 262 N.J. Super. 487, 511 (App. Div.), certif. denied, 134 N.J. 476 (1993). No miscarriage of justice exists where the "trier of fact could rationally have found beyond a reasonable doubt that the essential elements of the crime were present." State v. Herrera, 385 N.J. Super. 486, 492 (App. Div. 2006) (quoting Smith, supra, 262 N.J. Super. at 512).

In support of his argument that the evidence was insufficient to sustain his conviction, defendant reiterates his contention that J.B. did not suffer "serious" bodily injury, as defined by

N.J.S.A. 2C:11-1(b), because J.B. did not face a substantial risk of death or suffer permanent disfigurement. Defendant asserts J.B.'s injuries "constitute either bodily injury or at most significant bodily injury." See N.J.S.A. 2C:11-1(a), (d).

Based on our discussion above, this argument is rejected. Defendant caused J.B. to suffer a permanent limp and daily knee pain, as well as a disfigured nose. These injuries clearly meet the threshold for serious bodily injury because they constitute "protracted loss or impairment of the function of any bodily member." N.J.S.A. 2C:11-1(b). As such, we find the evidence at trial was sufficient to establish defendant's guilt of second-degree aggravated assault. There is no basis to disturb defendant's conviction.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION